## Stewart *against* Stocker.

When money is made by the sheriff, and brought into court for appropriation, and facts are disputed, it is competent for the court to direct an issue in which the truth of those facts may be ascertained by a jury, and such issue may be put into any form by which the object may be more readily attained.

A mortgage or judgment may be given to secure a creditor for a debt due, for responsibilities which are contingent, or for future advances.

The validity of an execution, like that of a judgment, cannot be inquired into collaterally.

A defendant in an execution, the proceeds of whose property is in court for appropriation, may be examined as a witness on the trial of a feigned issue, to ascertain facts in relation to it, his interest, as regards the plaintiff and the defendant in such issue, being equal.

ERROR to the common pleas of *Alleghany* county.

This was a feigned issue, directed by the common pleas to ascertain certain facts respecting the appropriation of the proceeds of the sale of the property of *Bosler & Co.*, in which *John C. Stocker* was plaintiff, and *Lazarus Stewart*, sheriff, was defendant. The facts which gave rise to the questions decided are fully stated in the opinion of the court.

*Ross* and *Forward*, for plaintiff in error.
*Selden*, for defendant in error.

The opinion of the court was delivered by

HUSTON, J.—This was a feigned issue directed by the court below, and subsequently modified by direction of the court, and, as it would seem, with the consent of all parties. It happens sometimes that in certain proceedings before a court, on motion, or otherwise, certain facts are contested, and either no full evidence, or contradictory evidence is given. It is usual in such cases to form an issue, in order to ascertain the facts, and this mode is directed in some cases by act of assembly.

As the object is to ascertain some fact or facts, the issue is moulded so as to answer this purpose. The usual mode is to join issue on a wager, in which one party asserts a fact or facts to be in a certain way, and the other denies ; but it is not necessary that this form should be always pursued. In this case the form adopted would seem to have been intended, and certainly is calculated to try the facts and law both, and, in truth, did so, although this would seem to be more than was originally intended, and perhaps more than is usual in such cases. This has been objected to here, and much insisted on ; but as no objection seems to have been made on this ground until after the verdict and judgment, I could not listen to it in this stage of the proceedings, except in a very peculiar case indeed ; as where the object for which the issue was directed was lost sight of in forming the issue, or in the course of proceeding in it. The court who directed such issue, when it is tried before themselves, can and ought to mould it into the form calculated to answer the end proposed ; and if it is found this has not been done, may arrest the proceedings and begin anew ; but if no objection is made until the conclusion of the trial, neither that court nor this (for we take writs of error to proceedings in a feigned issue in this state) ought to reverse for what was not objected to, and, of course, not decided by the court below, unless it is rendered absolutely necessary to reach the whole of the case.

Some facts and dates are necessary to understand this case. In the spring of 1823, *Anthony Bulin* and *Henry C. Bosler*, trading under the firm of *Bosler & Co.* found themselves greatly involved. After making some arrangements in favour of one or two persons, with which we have nothing to do, they, on the 23d April 1823, gave their bond, with a warrant, to confess judgment, and no stay of execution stipulated for, in the sum of 10,900 dollars, to the *Bank of Pittsburgh*; conditioned to pay the sum of 5455 dollars, with interest from this date, being the amount of the following eight notes ; the first seven being drawn by *Bosler & Co.*, and the last by *Henry C. Bosler*, discounted in the *Bank of Pittsburgh*; all payable at sixty days from their date. 1st dated March 5th, 1823, indorsed by *M. Neville*, for 425 dollars ; 2d dated March 5th, 1823, indorsed by *George Poe, Jun.*, for 425 dollars ; 3d dated March 19th, 1823, indorsed by *J. W. Biddle & Co.*, for 900 dollars ; 4th dated April 7th, 1823, indorsed by *James R. Butler*, for 675 dollars ; 5th dated April

[Stewart v. Stocker.]

9th, 1823, indorsed by *J. W. Biddle & Co.*, for 500 dollars; 6th dated April 9th, 1823, indorsed by *O. Orsmby*, for 1100 dollars; 7th dated April 23d, 1823, indorsed by *J. W. Biddle & Co.* and *George Poe, Jun.*, for 1280 dollars; 8th, and last, dated March 12th, 1823, indorsed by *William Hill*, for 150 dollars: and well and truly pay all notes given to renew said notes, and each and every of them; and shall well and truly pay off said notes as required, and save harmless and indemnify said *Bank of Pittsburgh*, in every respect, with regard to said notes, without any fraud or further delay, then this obligation to be void, otherwise to be and remain in full force and virtue.

This judgment was entered at the instance and on the repeated application of Mr *Poe*, who was the indorser on two of the notes, amounting to about 1700 dollars.

*Bosler* and *Bulin* were indebted to the plaintiff, *Stocker* and others, on notes or bonds; for these *Poe* was attorney in fact and agent; this I shall not examine, as it is acknowledged he was attorney in fact and agent; and he had instituted suits on all these claims; and under our act of assembly, they were referred to arbitrators, who were to meet on the 27th of May 1823, and whose award would operate as a lien on the lands of *Bosler* and *Bulin*, from the time it was filed, though no executions could be issued on such awards, until after twenty days from the time of filing them, and not then, if an appeal duly filed, until the appeal should be tried. It was well known, as the debts were due, that there could not and would not be any appeal, and that executions might issue in each of those cases, about the 16th or 17th of June.

On the 10th of June 1823, after three other executions had issued at the suit of other persons, and the legality and regularity of which are not disputed, an execution issued on the judgment, first above mentioned, *The Bank of Pittsburgh* v. *Bosler and Bulin*; at whose immediate instance it issued, is disputed; but Mr *Poe* attended the sheriff, assisted in making the levy, wrote the schedule of every article levied on, urged the sale, got the advertisements printed, stating every article to be sold, and that they were to be sold on an execution issued by the *Pittsburgh Bank* against *Bosler* and *Bulin.*

As soon as the reports of arbitrations had been made, twenty days had expired and no appeal, executions were issued at the suit of *Stocker* and other persons for whom *Poe* was agent, and these were levied on the same personal property, but subject to prior levies. The personal property was sold, and produced about 6738 dollars, being enough to pay the three executions prior to that of the bank; and part of the execution of the bank, but not all of it; and leaving nothing for the subsequent executions of *Stocker* and the others.

I must now go back a little space. *Bosler* and *Bulin* owed to the *Bank of the United States* nearly 100,000 dollars, for which, or great part of which, sundry persons, their indorsers, were also liable; and to secure this debt, and save those indorsers, they, on the 26th of

s

[Stewart v. Stocker.]

May 1823, the very day before *Stocker* and others expected a report of arbitrations and lien, conveyed a large amount of real estate to the bank. There is no allegation that the debt was not fairly due, and the property conveyed, was put at a fair, nay, at a high price. To induce the bank to accept of it, *Bosler* and *Bulin* covenanted to discharge all liens which bound it at the date of the deed ; and if he did discharge all prior liens, the bank were to release him and his indorsers from all claim, and take the property in full satisfaction of their demands. The deed to the bank was duly recorded. When Mr *Poe* first knew of this deed to the bank does not appear. The court of common pleas, which sat often in Pittsburgh by adjournment, was in session between the time of issuing the execution of the bank and the sale under that execution, but no application was made to the court on the subject.

On the 4th of August 1823, Mr *Baldwin* as the counsel of *Stocker*, but employed by *Poe*, *Stocker's* agent, took a rule to show cause why this *fi. fa.* issued at the suit of the *Pittsburgh Bank* against *Bosler* and *Bulin*, and on which this property had been sold, should not be set aside ; and another rule, it does not appear by whom, on the sheriff, to bring the money into court.

Out of these proceedings arose the present feigned issue ; much must have occurred between the August term 1823 and October 1826, when this issue was directed ; and this matter was once before in this court.

A very wide range has been taken in the discussion here, and in the court below. The fairness of the conduct of *Bulin* and *Bosler* in their deeds to the *Bank of the United States* and other persons, none of whom are before this court, have occupied much time. The only question to be decided here must be confined to this execution, for the judgment is not attacked, and, so far as we see, cannot be.

This judgment, in the name of the *Pittsburgh Bank*, is anterior to the conveyance to the *Bank of the United States*, and unless its lien is lost for want of a *scire facias*, would take its amount out of the lands in preference to the *Bank of the United States*. The judgments of *Stocker* and others, of whom *Poe* is one at least, are subsequent to that conveyance, and unless their amount is recovered from this personal property, will not be paid. If they get the proceeds of this personal property, they throw the loss on the indorsers in the *Bank of Pittsburgh*, or on the indorsers in the *Bank of the United States ;* for *Bosler* and *Bulin*, it is conceded, can never pay any thing.

*Anthony Bulin*, one of the firm of *Bosler & Co.*, was offered as a witness to prove that this execution of the bank was taken out with his assent, on the constant importunity of Mr *Poe*. The counsel of *Stocker* objected, and the witness was held to be interested—that he was bound to procure all liens on the property conveyed to be discharged ; if he did so he was to be released ; and if those liens were not all cleared off, he and his indorsers were not discharged. It appears to us that the interest of *Bulin* is exactly equal either way.

If this lien on the lands conveyed to the *Bank of the United States* is not extinguished by this levy and sale, *Bulin* will be liable to that bank for·so much money as will extinguish it, and no more ; the whole arrangement with that bank cannot be rescinded after it has recorded its deed, neglected to fix the indorsers by protest and notice, or if they were so fixed, permitted more than six years to elapse, and the statute of limitations to operate ; it can then at most recover a judgment against *Bulin*, on his agreement to extinguish the lien, to the amount of such lien.   If *Stocker* and others get this money, *Bulin* owes so much to the *Bank of the United States;* if the *Pittsburgh Bank* gets this money and their lien is extinguished, *Bulin* owes precisely the same sum to *Stocker* and others; he is then disinterested, or, what is the same thing, equally interested either way, and a competent witness.

When this cause was in this court before, (13 *Serg. & Rawle* 199) the chief justice, in delivering the opinion of the court, intended to put at rest most of the points now again brought before us. That opinion says, "the great objection to the plaintiff's action, and indeed it seems to me to be insuperable, is, that it calls in question the validity of an execution issued on a judgment, in a court of competent jurisdiction.   The judgment on the bond of *Bulin & Co.* to the *Bank of Pittsburgh* was regular—nothing about stay of execution in the warrant of attorney on which it was issued.   It was not void.; if erroneous or irregular, it might have been set aside on writ of error, or quashed on motion ; but without resorting to either of these methods the plaintiff has undertaken to invalidate it collaterally in this action ; this is against all principle.   The execution, until quashed or reversed, is good."

The court there state that a judgment informally entered is good until reversed; and the same principle applies to an execution ; they state a judgment by fraud as an exception, but then the plea of *per fraudem* must be replied to it, and there is no question of fraud on this record, &c.   Now it seems to me the same matter has been tried again in the same suit, on the same declaration, plea and issue, but with this difference, that this is a feigned issue, that a real one; and that the matter trying is in no respect different.   No fact is stated to be ascertained by the issue ; it is one in which law, equity and fact are blended; the matter and whole matter contested in the real suit is put in issue in this feigned issue, not even changing the form.

The opinion of the court was asked on sundry points proposed, and error is assigned in not answering the second, and in erroneous or equivocal answers to the third and fourth.

The second is not answered; it and the third may be taken together; they both ask the opinion of the court as to the effect of Mr *Poe's* conduct in procuring the execution, advertisement and sale on the judgment of the bank, and whether these acts do not preclude him from objecting to those acts, and setting all this aside.

The answer in the charge is, that the "jury may infer from those

[Stewart v. Stocker.]

facts that his urgency proceeded from a wish to secure the amount of his own personal debt, and of those judgments wherein he acted as agent for the plaintiffs." Now this, instead of answering the point proposed, amounts only to telling the jury that two inferences may be drawn from the facts proved, but does not tell them what the law would be, if found as the defendants supposed; and is erroneous, if found as the judge supposes probable. Each supposition admits he did the acts stated by the defendants, and the judge says if he did them with a view to secure *Stocker's* judgment, which he knew he would obtain on the 27th of May, and several others, among which was one of his own on the same day, that all may be right; that he may have used an execution on the bank's judgment to levy, advertise and sell *Bosler & Co.'s* property, and then turn round and say, " All this was mere show; I will now set it all aside, because as things have turned out, it suits my interest to do so, and that court ought to decree accordingly." The law is not so; the process of the court cannot be so made to be good if a man pleases, and bad if the same man pleases, without regard to the interest of any and every body else; this I say, supposing the execution of the *Bank of Pittsburgh* was legally issued—Was it so?

It is now settled in this state that a mortgage or judgment may be given to secure a creditor, not only for a debt due, but for responsibilities which are contingent, nay, for future advances. *Lisle* v. *Ducomb*, 5 *Binn.* 585. This judgment to the *Pittsburgh Bank* was, as the judge rightly decided, to secure the bank, and also to secure the indorsers on the notes of *Bosler & Co.* then in bank, or which should be given to renew those notes as they fell due. There was no stipulation for any stay of execution. The fairness and validity of this judgment is not questioned. *Bosler & Co.* are stated to have been in debt beyond all hope of extricating themselves. It was possible that they would on any day confess a judgment to some of their creditors, without stay of execution, and their large personal property might have been in an hour beyond the reach of this judgment. It was certain *Bosler & Co.* would never pay the notes in the *Pittsburgh Bank;* that the indorsers must pay them; they would all fall due in June. It was certain that *Stocker* and others would take executions on or about the 20th of June. It was no stretch of their authority in any of the indorsers in the *Pittsburgh Bank* to call for execution on that judgment on the 10th of June, and to levy it instantly. If *Bosler & Co.* had objected to this execution, it is not easy to discover on what grounds the court could have set it aside. We had some cases before us at Lancaster last May not unlike this. *Howry* and *Eshelman* were largely in trade, and largely in debt; they had borrowed money on bond, with some of their friends as sureties in those bonds, and in bank with some of their friends indorsers, and to secure those friends, had given them judgment without stipulating for any stay of execution. While those bonds and notes had still a short time to run, the creditors of *Howry* and *Eshelman* sued

them, entered rules of arbitration, and obtained judgment, and in twenty days could take, and in fact did take execution on the twenty-first day. In the mean time their sureties and indorsers took out executions on their judgments, though none of them had paid the debts for which they were sureties, and were not liable to suit for those debts for some days yet to come. The property was sold, and money brought into court. The common pleas decided, and under the act of 1827, an appeal to the supreme court, and the executions thus issued by the securities and indorsers took the money, by a decision of a majority of this court. In those cases the defendants, as here, made no objection to the first executions. I will add, that in those cases the sureties had paid the money for which they were bound before the money was brought into court, so that there was no danger of the surety recovering money from his principal to pay a debt, and afterwards not paying it. So here, the bank recovering the debt, the indorsers are thereby at once discharged; and although I was not entirely satisfied with the decision at Lancaster, yet, upon reflection, there is no actual injustice in collecting the debt from the principal in the first instance, instead of pressing the surety and turning him round to the principal. And when the form of the agreements will admit of its being collected from the principal, perhaps no court will interfere to throw it on the surety in the first instance. The authority of those cases would determine the same point in this case.

Towards the conclusion of his charge, the Judge comes to this opinion. "The case as a matter of fairness depends upon this," says he, "was the object of the acquiescence and waiving protection from the execution, to give a preference to particular creditors, who were the indorsers of *Bosler & Co.*; or was it the intent to get the control of the judgment, in order that the proceeds of the personal property might be applied at the option of the defendants, to secure any creditors they pleased? If the former was their object, and it is clearly made out, I should be disposed to think the defendants would be entitled to the money. If the latter, it appears to me the most dangerous effects would result from allowing it to pass without censure." And then again he says, "if the acquiescence on the part of *Bosler & Co.* be considered by the jury as a fraudulent acquiescence, the verdict will be for the plaintiff; and such will be your verdict, if you deem there was no acquiescence at all."

One of the alternatives in this, to wit, "was it the intention to get the control of the judgment in order that the proceeds of the personal property might be applied at the option of the defendants to secure any creditors they pleased," could not, I apprehend, be fairly put to the jury; for if the *Bank of Pittsburgh*, or the indorsers in that bank, took out an execution and levied on *Bosler & Co.'s* property and sold it, the debt of that bank was so far extinguished; if the bank permitted the proceeds of sale to be lost in the sheriff's

[Stewart v. Stocker.]

hands, or permitted the sheriff to pay it to any person who had not a prior levy, it would not alter the case ; not even if this was done at the instance of *Bosler & Co.,* if any other judgment creditor of *Bosler & Co.* objected. A judgment creditor who has sold his debtor's property, is satisfied in law, to the amount of the sale, if his sale is not set aside ; he never can demand that money, nor keep his judgment alive as to that money, as against other creditors. I do not see how it can then be left to a jury to decide, that the bank, which levied and sold and is claiming the proceeds, does not intend, and never intended to take the money ; after it has got the money, it may give it away or throw it in the river ; its debt is discharged, and the court and other creditors have nothing to do with the money after that. It seems to me, however, that where a creditor, who has taken execution on a fair and legal judgment and levied his money, and the sheriff brings it into court, cannot be deprived of it by leaving it to a jury to inquire whether he intends to make a good or bad, a probable or an impossible use of his proceedings and the money raised by the law for him.

The last proposition by the judge, is still more objectionable, it is, that "your verdict will be for the plaintiff, *Stocker,* if you deem there is no acquiescence at all ;" that is, no acquiescence by *Bosler & Co.* Now, acquiescence, in this case, means, and must mean, no opposition. When a man's property is levied on and sold, and the money brought into court, and he makes no opposition, no objection, and no application to the court, he acquiesces ; and if this state of things continues for years, and he whose property was sold, neither acts nor speaks in opposition to the proceedings, it is out of the question to leave it to a jury to decide, whether he acquiesces or not. If, however, the word *acquiesce,* in the hurry and inadvertence of the trial, was used instead of the word " assent," it will not mend the matter. After a silence, a want of objection or interference from 1823, an assent is to be presumed, or the length of time and change of circumstances will preclude them from expressing a dissent now, and it must be taken that they did not disagree, that they acquiesced at the time.

Judgment reversed and a *venire facias de novo* awarded.