# Moroney's Appeal.

A mortgage, given with a bond and in the common form and immediately
recorded, and intended to secure the payment of a sum of money which the
mortgagee then contracted to loan to the mortgagor for the purpose of enabling
him to erect houses on the mortgaged property, and which was to be advanced
in proportion to the progress of the work, is valid, though the contract of loan
be not referred to in the mortgage, nor recorded; and it ranks as a lien for the
amount loaned from the date of its record, and not from the date of the actual
advances; and this is so, though the mortgagor contracted to apply the money
to the payment of the builders, and had, in part, failed to do so, and they had
entered their liens.

APPEAL by Moroney, a mechanic's lien creditor, from the de-

cree of the District Court of *Philadelphia*, in the matter of the distribution of the proceeds of the sheriff's sale of the real estate of Joseph Montgomery.    The case turned entirely on the validity of several contemporaneous mortgages on contiguous lots, and which the Court treated as one, given by Montgomery to Cadwalader.

On the 7th August, 1849, Cadwalader conveyed to Montgomery, by several deeds, sixteen lots in Philadelphia, for the consideration of ground-rents reserved.    At the same time Cadwalader contracted, in writing, to loan to Montgomery $12,000, to aid him in erecting buildings upon the lots; but the money was not to be advanced immediately, but only in certain specific sums, in proportion to the progress of the buildings, the final payment to be made when the houses "shall be finished, and release of liens fully signed."    At the same time, and in consideration of the above, Montgomery gave to Cadwalader bonds and mortgages on the lots in the common form for the sum of $12,000, which mortgages were recorded on the same day.

Within a week afterwards the buildings were commenced, were afterwards carried on to completion, and the money was advanced by Cadwalader, according to his contract.    Some of the builders, not having been fully paid, entered their liens.    The property was afterwards sold at sheriff's sale on executions against Montgomery, and the money brought into Court for distribution.    The mechanic's lien creditors claimed priority to the mortgages of Cadwalader, but were not allowed it, and hence this appeal, and several others under the same circumstances.

The question was argued and re-argued at different terms.

*E. Ingersoll*, *Lawrence*, *Porter*, and *McElroy*, for appellants, insisted that the law required that the record should truly and fully exhibit the transaction: 4 *Kent* 175; 4 *Conn. R.* 158; 5 *Id.* 446; 17 *Ser. & R.* 72; 7 *Watts* 268.    If it was for future advances, this should appear: 5 *Bin.* 585; 1 *Watts* 140; 17 *Ser. & R.* 420; 6 *Watts* 59.    The mechanics' liens, having attached before the advances were actually made, have priority: 2 *Barr* 96.    The mortgagee was bound to see that the builders were paid; and any other view would have to regard the mortgages as intended to cut out the other liens, and therefore as a fraud upon them.

*McMurtrie* and *Cadwalader*, for appellee.—Many cases show that the collateral agreement need not be recorded: 7 *Cranch* 34; 9 *Barr* 86; 2 *Id.* 96, 99; 1 *Id.* 493; 1 *Watts* 140, 385; 7 *W. & Ser.* 395.    Where one is bound by contract to advance money, his lien is not postponed to subsequent ones: 3 *Penna. R.* 374; 9 *Paige* 132; 7 *Conn.* 388; 8 *Id.* 215; 6 *Whart.* 545.    We have examined the record of the mortgage in Lyle *v.* Ducomb, 5 *Binn.* 585, and find that the collateral agreement there referred to is not

recorded. The agreement between Montgomery and Cadwalader as to the application of the money, gave the builders no claim upon Cadwalader: 1 *Gill & J.* 362; 16 *Ves.* 151, 156; 2 *Sugd.* 35, § 9.

The opinion of the Court was delivered by

LOWRIE, J.—Why should the omission to record the collateral agreement postpone the mortgage? Is it because the consideration of the debt is not set out in the bonds and mortgage? The expression of a consideration, as such, is never necessary to the validity of sealed instruments. But the debt expressed in the bonds is the consideration and subject-matter of the mortgage; and, as subject-matter, it was necessary to set it out, and it is done truly; and the parties have, by their contract, created a lien for that very debt.

It is said, however, that it was not properly a debt then owed, because the covenant, which was the consideration of it, had not then been performed. But this conclusion is very plainly inconsequential; for a promise to be performed in future is one of the most common of all kinds of considerations for a present debt. The strict legal character of the transaction depends upon the form in which the parties have invested it; the bonds for the covenant, and the covenant for the bonds, each independent debts. How are they connected? Only by equity. If Cadwalader breaks his covenant, Montgomery may obtain relief in equity as against the bonds and mortgage. But he might not need this, for the remedy on the covenant might be complete.

If equity interferes to change the form given to the matter by the parties, it does so for the purposes of equity, not iniquity; to establish the claim according to its spirit, not to defeat it; to save the mortgagor and his creditors from the forfeiture and from the penalty, and compel the creditors to accept the real debt and interest; to save him and them from any fraud or mistake, and not to let them gain an advantage by it. The relevancy of Cadwalader's covenant is therefore only contingent. It might be important as a ground of equitable relief, but it has no strictly legal connexion with the mortgage. It is entirely irrelevant, except on the allegation that the consideration of the bonds has failed. Here it did not fail, and therefore the legal and the equitable aspects of the transaction coincide.

And such a covenant or collateral agreement as we have here, has never been required to be recorded. The Acts of Assembly simply require the recording of the mortgage. True, it was decided in Hamilton *v.* Freedly, 17 *Ser. & R.* 70, that where the mortgage consists of a conveyance with a separate defeasance, the recording of the conveyance is not a compliance with the law, because by such a record it does not appear as a mortgage trans-

[Moroney's Appeal.]

action. But the sharpness of this principle has been somewhat moderated in Jaques v. Weeks, 7 *Watts* 261, by holding such a record sufficient, if the mortgagee is in possession; because this is notice enough to put people upon inquiry, when they may ascertain the true character of the claim. Yet such implied notice contains in it no indication of the terms of the mortgage. Of the same character is M. & M. Bank v. The Bank of Pennsylvania, 7 *W. & Ser*. 335, where actual notice of the defeasance supplied the neglect of recording it. Of course these cases refer to the effect of such matters upon subsequent liens and purchases, for the mortgagor could not raise the question.

So in Garber v. Henry, 6 *Watts* 57, the conveyance contained a condition that it was to be void on the payment of certain sums of money, said to be mentioned in another agreement, but not set out in the conveyance. It was entirely imperfect as a mortgage, and in strict law it was absolute, for the condition was void for uncertainty, taking it by itself, and as it was recorded. Yet this reference to another instrument was regarded as sufficient in equity to make that instrument a part of the conveyance, and thus convert it into a mortgage; and therefore in equity it was a recorded mortgage, containing sufficient notice of a defeasance, which was substantially unrecorded. And such is the case of Crane v. Dening, 7 *Conn. R.* 388, and there it is said to be sufficient that the defeasible character of the instrument appear, with such information in relation to it as will direct inquiry and guide investigation; and that it is no objection that the inquiries may be difficult to make because of the distance of the mortgagor's residence: 7 *Conn.* 396; 4 *Id.* 162; 5 *Id.* 449; 6 *Watts* 59.

The case of Lyle v. Ducomb, 5 *Binn.* 585, is very nearly like the present one. It was, as recorded, a mortgage for a sum absolute; but there was an agreement showing that it was for endorsements made and to be made, which agreement has been ascertained to have been unrecorded, though this is not noted in the report of the case. It differs in this, that the endorsements were made, but not paid before the contesting lien was created.

It was held, however, that the fact that the debt was stated in the mortgage as absolute when it was not so, and that the collateral and qualifying agreement was not set out nor referred to, did not invalidate the lien of the mortgage as to subsequent lien-creditors; and this is the point of its relevancy here. And for this point the case of Lyle v. Ducomb has become an authority all through the United States, and has never been doubted. The principle of it is affirmed everywhere: 7 *Cranch* 24, 50; 9 *Paige* 132; 8 *Conn.* 219; *Paine's C. C. R.* 525; 4 *Johns. Ch.* 64; 1 *Pet.* 448; 7 *Vin. Ab.* 52, pl. 3; 1 *Watts* 140. It is involved in Gordon v. Preston, 1 *Watts* 385, where it is decided that the fact

that the mortgage is for a greater sum than is due, does not avoid it as to other lien-holders, unless there be fraud; and in all the numerous cases where mortgages to secure future advances are held to be good, for in these cases the information is necessarily indefinite, and demands investigation.

It has been supposed that there is a public policy that demands that the record of the mortgage shall be more specific than it is in this case; but the supposition is plainly disproved by the cases above referred to, and their evidence is corroborated by the practice in relation to judgments. Nothing is more common than to enter judgments for the penalty of bonds without any notice being taken of the real debt in any part of the record. Unless when oyer is craved, the condition is no part of the record, where the old common law form of a record is still adhered to.

In Parmentier v. Gillespie, 9 *State R.* 86, this point was raised, and it was decided that a judgment confessed for a certain amount as due was good though it was really given for advances made and to be made, and this as against liens entered before the advances were made, if they were made in pursuance of a previous agreement. The same principle is held in Ter Hoven v. Kerns, 2 *State R.* 96, and in many other cases: 1 *Watts* 140, 374; 3 *Pa. Rep.* 374; 5 *Johns. Ch.* 320. It has never been supposed that such a judgment was void because of the neglect to change the common law form of a record in order to set out the equitable conditions on which it was given; and there would not be much equity in now declaring that the common law and common customs and common forms of conveyancing are all wrong. In New York it has been considered important to have the true state of such judgments specified, and an Act of the legislature has been passed requiring it.

Besides this, an assignment to secure debts is not void, because of its being absolute on its face: 2 *Johns. Ch.* 283. A pawn or pledge of any kind is not void because its conditions do not appear. In debt on bond to secure the performance of conditions, only the broken conditions appear on the record, yet the judgment for the penalty is a lien to secure the performance of others yet remaining unbroken.

And why should it not be so? No man deals in real estate on faith in the liens as recorded; for subsequent facts are continually changing their true character by payments and otherwise. To direct inquiry and guide investigation is therefore a main purpose of the record.

But it is argued that since Cadwalader had not advanced the money when the buildings were commenced, it was his duty to see that it was properly appropriated to pay the builders, and thus discharge their liens. The least reflection will show, however,

that this is only another mode of stating the proposition which we have already disproved; for his lien is postponed if its priority is conditioned upon his paying theirs; but we may notice it further.

We have shown that the record of the mortgage is notice of the lien which Cadwalader had obtained; and it is therefore very plain that the builders undertake to work subject to Cadwalader's rights; in other words, they have no claim upon him, either to yield the position which he has obtained, or to treat with them, that he may be allowed to maintain it; they can claim no right, under such circumstances, which the owner could not grant.

Cadwalader's covenant binds him to aid the work by advancing money in proportion to the progress of the work. But, as soon as the work commenced, the builders' liens commenced; and it is argued that, as Cadwalader had then advanced no money, their liens took precedence of his, and that, of consequence, he was not bound by his covenant to make advances; and those made after that were voluntary, and could not cut out the builders' liens.

This argument begins by assuming the proposition which has already been disproved, that the advances, and not the mortgage, created the liens; though the contract with the parties is, with notice to all the world, expressly otherwise. It is arguing in a circle by using the conclusion as a means of proving itself.

Next, this argument makes the commencement of the work, for which Montgomery had Cadwalader's covenant to aid him, the very ground of relieving Cadwalader from his covenant—the commencement of the work created a prior lien, and, therefore, Cadwalader is excused from making his advances until that is removed. This is to make the contract defeat itself; it makes it void from the beginning, because it is impracticable; and the houses can never be erected, because the first shovelful of earth removed creates a lien, that shuts down the coffers out of which it is to be paid for; or the laying of the first floor of joists on these thirty-two houses stops their further erection, because it creates a lien that cuts off the mortgage by which the money was to be supplied. If the owners of these liens trusted Montgomery without examining the state of the records, the law provides no relief from the consequences of their negligence, and morality does not demand that it shall, and even charity will not allow it at the expense of more careful men. If they did examine the records, then they found the lien of Cadwalader standing good against Montgomery, and honesty forbids them to cut it out for their profit. If they found it, and still trusted Montgomery without inquiry, then they agreed to trust him even with a lien against him of $12,000, and with no apparent means to pay them. If they made inquiries, then they learned that he would have $12,000

in hands to pay for the improvements he was making, and they trusted him that he would appropriate it properly. In no way that we can regard this case, can we perceive that the appellants have any show of equity to demand that their claims shall be preferred to the mortgage.

Decree affirmed at the costs of the appellants.

WOODWARD, J., and KNOX, J., dissented.