## Taylor *versus* Cornelius *et al.*

1. D. being indebted to T., and owing other debts, conveyed by absolute deed all his real estate to T., who at the same time made a declaration of trust, that he would sell all or part of the property, pay the debt due himself, and all sums to be advanced by him for D., and $5000 for his commissions, &c., and upon payment to T. of all these sums with interest, that he would reconvey the remaining property to D. *Held*, that these instruments together constituted a mortgage, and not an assignment for creditors.

2. There was in the instruments no trust for any creditor, and no one but D. could call T. to account.

3. The equity of redemption was subject to sale on execution against D., and the proceeds of sale in the hands of T., after payment of advances, were subject to attachment.

4. Advances made by T. after a junior lien against D. would be subject to it, but as mortgagee in possession he would be entitled to credit for all payments on prior encumbrances, for taxes, insurance, repairs and similar charges.

5. If T. was under obligation by contract to make advances, if he had bound himself personally to pay D.'s debts, he would be entitled to the security of his mortgage for such advances, though after the junior lien.

6. Buildings on the property conveyed were burned, and T. received the insurance: attachments were issued against D.: T. applied the insurance to rebuilding. If before the attachments he had, with the consent of D., made contracts for rebuilding, he had a right to apply the insurance to that purpose.

7. A bill in equity was filed by D. against T. for reconveyance of the unsold real estate. T. in his answer set out the attachments. A supplemental bill was filed, making the attaching creditors parties; they appealed and answered, alleging fraud in the conveyances, and that their attachments bound all money in T.'s hands. It was decreed that T. should make the reconveyance, and D. should release T., and the bill as to the attaching creditors was dismissed. *Held*, that the whole decree was conclusive as to them.

8. The attaching creditors might have appealed from the decree, because it bound their right.

9. To render a decree conclusive against a party it need not be against him by name; it is enough if it is against his interest.

10. Whatever was properly involved in the equity suit, and might have been raised and determined in it, is concluded by the decree.

January 11th 1869.　　Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.　　WILLIAMS, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 217, to January Term 1867.

The proceeding in this case was an attachment execution at the suit of Robert Cornelius and others, trading as Cornelius & Baker, against Bernard Douredoure, in which William Taylor and Simon Delbert were the garnishees. The attachment was issued and served June 28th 1858. The judgment had been recovered to June Term 1858 for $352.65. The defendants pleaded "*nulla bona.*"

The facts in the case appear to be as follows:—

On the 7th of September 1853 Bernard Douredoure, being

[Taylor *v.* Cornelius.]

solvent, conveyed to Henry Bonsall in trust for his wife, Anita F. Douredoure, a considerable portion of his real estate. On the 22d of September 1854, Douredoure made a general assignment for the benefit of his creditors to Charles S. Pancoast and Thomas Matlack. It was afterwards agreed between Douredoure and wife and Taylor, that Taylor should assume all the debts of Douredoure and carry out certain contracts made by him in relation to the real estate, and Mr. and Mrs. Douredoure, in consideration of Taylor's assumption, with the consent of the assignees and all creditors of Douredoure, agreed that all the real estate of Douredoure which had been transferred to his assignees, and also Mrs. Douredoure's separate estate, should be conveyed to Taylor, and that he should execute a declaration of trust, setting out the conditions and purposes for which the conveyances to him were made. The consent of all the creditors to this arrangement was obtained. On the 30th of July 1855 Mrs. Douredoure's real estate, designated as Nos. 1, 2, 3, 4, 5, 6 and 7, was conveyed to Taylor. On the 24th of December in the same year, Taylor executed the declaration of trust stipulated for, and on the 29th of February 1856 the assignees of Douredoure conveyed to Taylor the real estate which had passed to them under the assignment. These instruments, although recorded, had not been put upon record for more than 30 days after their execution.

Taylor's declaration of trust was as follows:—

" Whereas, there have been conveyed to me by deed several properties formerly belonging to Anita Douredoure, wife of Bernard Douredoure, and I expect to receive from Charles S. Pancoast and Thomas Matlack, assignees of said Bernard Douredoure, other properties of different kinds; and whereas, these properties have been and are to be conveyed to me absolutely and as though they were my own, when it is otherwise intended: Now, therefore, I do declare that the same and every part thereof are holden by me upon conditions as follows, that is to say: That they may be sold, all or any portion, by me at any time after six months from the date hereof, either by public or private sale, and the proceeds to be applied to repayment to me of the sum of twenty thousand six hundred and thirty-four dollars, or thereabouts, already advanced and expended by me in purchase of debts and liabilities of said Bernard Douredoure, and of all other sums to be advanced by me for account of said Bernard Douredoure, together with a further sum of five thousand dollars for my commission, labor and trouble herein, and all other expenses in any manner incurred by me, without any responsibility on my part for anything done or omitted to be done; and upon repayment to me of all sums so due, together with lawful interest, I will convey all the properties remaining unsold, that is to say, those formerly belonging to Anita Douredoure, to her or to her order,

[Taylor *v.* Cornelius.]

and those formerly belonging to Bernard Douredoure I will convey to him or to his order, he or she paying all necessary attendant expenses."

Taylor satisfied all the creditors of Douredoure and his assignees, and the real estate conveyed to them was entirely discharged from all liability under the assignment. In 1857 the buildings on part of the real estate of Mrs. Douredoure were destroyed by fire, Taylor received the insurance and expended it in the erection of buildings on the same site. Between June 1858 and December 1859 judgments to the amount of about $5400 in all (including the plaintiffs') were recovered against Douredoure; attachment executions issued on them, which were served on Taylor as garnishee. On the 1st of December 1860 there were due to Taylor $21,564.79, not taking into account the last-mentioned judgments. Taylor then agreed to accept, in satisfaction of his debt, certain portions of the real estate, free from the conditions in the declaration of trust, and Mr. and Mrs. Douredoure agreed to release those portions from the trust, Taylor at the same time agreed to reconvey to Mrs. Douredoure Nos. 3 and 4 of her real estate. To January Term 1862 Mrs. Douredoure filed her bill in the Supreme Court for a decree to compel Taylor to reconvey to her the above-mentioned lots, Nos. 3 and 4 of her real estate. Taylor by answer admitted the allegations in the bill, but averred in defence the pendency of the attachments—including the plaintiffs'—on the last-mentioned judgments against Douredoure, and submitted to the court "that the said creditors should be made parties to the complainants' bill, in order to relieve this defendant from all risk and liability in relation to the proposed settlement of his demand against the complainants, and secure to him a good and undisputed title to the said real estate, which it was proposed and agreed that this defendant should accept and receive in settlement as aforesaid."

A supplemental bill was then filed to make the attaching creditors parties. Three of them, including the plaintiffs, appeared, and, after demurrers which were overruled, filed separate answers, denying that the property claimed by Mrs. Douredoure was her separate property, but that her husband had interests therein which passed to his assignees, or were subject to execution by his creditors; desiring an opportunity to show that the property was in fact Douredoure's, and that the conveyance to Mrs. Douredoure was to defraud his creditors; averring that Taylor's intervention was a fraud on Douredoure's creditors; that the conveyances to Taylor far exceeded the debts of Douredoure, and the declaration of trust was a secret one, not having, as appears by the bill, been put upon record, and that the creditors of Douredoure were thus delayed, &c., they believing that the conveyance to Taylor was bonâ fide and for full value; that the trust provided

that the conveyances should secure not only the debts for which the assignment had been made, but future advances by Taylor to Douredoure, and commissions to Taylor, thus being a secret trust for the debtor; that the transaction was a fraud in law upon the creditors, and therefore the attachments are valid, and bound all money in the hands of Taylor received from the property, and that the plaintiffs in the bill can ask no relief in a court of equity, and requiring plaintiffs "to show the entire bona fides of all of said conveyances and the consideration in said bill alleged, and particularly the legal and equitable ownership of said Henry Bonsall, trustee for said Anita, and what value she had paid for the properties embraced in said trust."

A general replication was filed, and the cause referred to an examiner to take proofs.

On the report of the examiner the court decreed, amongst other things :—

"That the defendant, William Taylor, do grant and convey, by good and sufficient deed, to the plaintiff, Anita F. Douredoure, in fee simple, the real estate mentioned in the said bill as agreed by him to be conveyed to her.

"That the plaintiffs execute and deliver to William Taylor a good and sufficient release and discharge of the real estate mentioned in the said bill as agreed by them to be released to him from the effect and operation of the said declaration of trust.

"That the said William Taylor do hold the said real estate freed and discharged from the effect and operation of the said declaration of trust, and from all liability by reason of the judgments held by the other defendants against the plaintiff, Bernard Douredoure.

"That the defendant, William Taylor, accept and receive the said premises, so as aforesaid released to him from the effect and operation of the said declaration of trust, in full satisfaction and discharge of the balance ascertained and now decreed to be due him by the plaintiff, Bernard Douredoure, to wit, &c., * * and that satisfaction be entered on the record of the said declaration of trust, and that the same be delivered up to the said defendant and cancelled.

"And the bill is dismissed as to the other defendants who appeared and answered, with costs."

All the foregoing facts were given in evidence on the trial of the attachment.

The court (Hare, J.), after referring to the facts, charged :—

* * ["It appears to me, looking at the whole of this transaction, that though it is presumed to be a transaction in good faith between the parties, still the transaction is one which the law will not permit. Because the law requires if a man makes an assignment for the payment of his debts, and whether he is to gain that

[Taylor *v.* Cornelius.]

object directly or indirectly—if he constitutes a trust for the payment of his debts, that whole trust shall be put on record in order to prevent the possibility of fraud. If it is not, then the creditors are entitled to come in at any period and impeach the transaction, and require the money to be paid instead of it going in pursuance of the trust. And from the time of the execution of the attachment all subsequent payments in pursuance of the trust will be in fraud of the creditor and against the law; at all events they are payments for which he cannot obtain credits as between himself and attaching creditors.] But the law is not so harsh as to call him or a creditor to account for payments made before the attachment. As to all disbursements made in execution of his trust before the attachment he is entitled to credits; but as to payments made after the attachment he is not entitled to credits.

"So the question comes down to you as one of account or fact, whether moneys were received by Taylor, the garnishee here, from the estate of Douredoure in his hands, subsequent to the time at which this attachment was levied, for which he is not entitled to credits, because, as to all such moneys received from that estate and forming part of this trust, he cannot credit himself for payments made afterwards. The period of time is fixed, namely, June 28th 1858. [What you will have to decide is, whether moneys were received by Taylor after that date, for which he is not entitled to credit for payments made before that date. If that be so, then, to the extent of the moneys so received, he is answerable to the attaching creditor.] I wish that question went to you in the case freed from all ambiguities. The principle of the law is a clear one; the facility of applying it is not so great for want of clearness in regard to the evidence.

"In the first place, suppose this account laid before you is one in which Taylor charges himself for all the moneys received under this trust—and, as I understand it, he does so, making no distinction between them, being ignorant of the law, and not knowing it to be at all material. In point of fact, however, he had in his hands not only the lands belonging to Mr. Douredoure, but also lands belonging to Mrs. Douredoure. So far as Mrs. Douredoure's lands were concerned, the creditors of her husband had nothing whatever to do with them. They had no right to be paid in derogation of the trust which she created. That property being her own, she could create just such a trust as she chose. [Subsequent to the time of the attachment coming in, the rents and profits derived from Mrs. Douredoure's estate are such as Mr. Taylor is not chargeable for here. You need not consider those amounts in striking an account between subsequent payments and receipts.]

"There is another point for consideration with regard to the

[Taylor *v.* Cornelius.]

property destroyed. It is said, in this connection, that certain amounts of money were received from insurance companies. Now, if that money received from insurance companies was money resulting from the estate of Mrs. Douredoure, if they were her houses that were burned down, it would follow the property. I have already stated that for any rents of her own coming into the hands of Mr. Taylor he would not be bound here, except so far as he was executing his office as trustee. If it was Mr. Douredoure's property that was burned down, other questions might arise.

" If it was Mr. Douredoure's property that was destroyed, then of course the proceeds arising from the insurance on that property ought to go in payment of his debts. Some portion of these moneys, it seems, went to pay off mortgages; and one question is, whether Taylor is entitled to a credit for the amount so expended in payment of these mortgages. If these mortgages were, as is frequently the case, accompanied by an assignment of the policy of insurance, then the mortgagees would have a specific right to the application of any fund which might result from a destruction of the building to the payment of their debts. If Taylor received the money instead of the mortgagee, it would still be the mortgagee's, and Taylor would be bound to pay it over. If there was no such assignment of the policy of insurance with the mortgage, then in that case you are to consider that although there was a mortgage on the land, yet so far as this money was concerned it was precisely like the payment of any other debt; and if Taylor was not entitled to pay the debts generally from the time the attachment came into his hands, neither then was he entitled to pay the mortgage.

" It appears that a certain portion of this insurance-money was applied to rebuild the houses—to repair the loss which the fire occasioned. If these houses were Mrs. Douredoure's houses, the principle before mentioned applies as well here; [but if they were Mr. Douredoure's, I do not conceive that a trustee for the benefit of creditors whose title to lands arises from a deed of trust, in case of a destruction by fire, can proceed to execute the trust by rebuilding after an attachment has been served upon him. He cannot proceed to apply that money to building up those houses, because it is in effect the money of the assignor in his hands, and therefore ought to go to the assignor's creditors, and not to rebuild the assignor's property.] * * *

" Another point noticed in the argument, although a mere matter of law, I think proper to answer here, and give the benefit of an exception; that is, whether a decree is conclusive upon the plaintiffs in this case, who were brought into a court of equity, and made a party subject to the decision of the court there. I

[Taylor v. Cornelius.]

think that, so far as Mrs. Douredoure was concerned, it ought to be regarded as conclusive. Another point made is, that there is an estoppel here; that this matter has been solemnly adjudicated, and therefore cannot be called in question. But between Mr. Douredoure, Mr. Taylor and the plaintiff, when the bill was dismissed, the court in effect said they would not adjudicate as to that question; consequently the question remains open for your decision."

There was a verdict for the plaintiffs against the garnishees for $528.74. The defendants took a writ of error.

In the Supreme Court the assignments of error were that the court erred:—

1. In construing the conveyances to William Taylor, the garnishee, and his declaration of trust, to be an assignment for the benefit of the creditors of Bernard Douredoure.

2. In charging the jury as follows: "It appears to me, looking at the whole of this transaction, that though it is presumed to be a transaction in good faith between the parties, still the transaction was one which the law will not permit."

2, 3, 4 and 5. The several parts of the charge included in brackets.

6. In charging the jury that the decree of the Supreme Court in equity, in the cause between Mr. and Mrs. Douredoure, Mr. Taylor and the attaching creditors, was not conclusive upon the attaching creditors in this case, and that they were not thereby barred from proceeding with their attachment.

*W. S. McElroy* and *C. Gibbons*, for plaintiffs in error.—The deeds to Taylor and his declaration of trust together constituted a mortgage. A conveyance of land directly to a creditor to secure his own debt is not an assignment for creditors generally: Chaffees *v.* Risk, 12 Harris 432; Henderson's Appeal, 7 Casey 502; Griffin *v.* Rogers, 2 Wright 382. The recording of the papers made the mortgage valid against subsequent creditors. A mortgage is good for contingent responsibilities and for future advances to the full extent of it, where the record gives information of the agreement, so that a junior creditor may by inspection of the record, and by common prudence and ordinary diligence, ascertain the extent of the encumbrance: Stewart *v.* Stocker, 1 Watts 140; Garber *v.* Henry, 6 Id. 57; Parmentier *v.* Gillespie, 9 Barr 87. Taylor being a mortgagee in possession, receiving rents, was bound to keep down encumbrances, and the service of the attachment would not relieve him. They can claim no more than their debtor, and he could not compel Taylor to collect rents and pay him, and let encumbrances and taxes go. This would be so, notwithstanding advances made after a junior lien would be

10 P. F. Smith—13

[Taylor *v.* Cornelius.]

subject to it according to Terhoven *v.* Kerns, 2 Barr 96; Bank of Montgomery County's Case, 12 Casey 170.

In the equity proceedings the whole of this matter was adjudicated. The amount due Taylor was definitely settled, and by the decree nothing was left in his hands to meet the attachments. The attaching creditors were called into court and contested Mrs. Douredoure's right to a conveyance, and it was decided that they had no available rights against her. Mrs. Douredoure was surety for her husband, and had a right to be subrogated to the mortgage: 2 Story's Eq. Jur. § 1373; Robinson *v.* Gee, 1 Ves., Sen. 252; Aguilar *v.* Aguilar, 5 Mad. Ch. 414; Parteriche *v.* Powlet, 2 Atk. 383; Pocock *v.* Lee, 2 Vern. 604; Gahn *v.* Niemcéwiez, 11 Wend. 312; 3 Paige Ch. 614; Sheidle *v.* Weishlee, 4 Harris 134.

*E. S. Miller* (with whom was *J. S. Price*), for defendants in error.—The deeds of February 1856 and the declaration of trust together amounted to an assignment for the benefit of creditors: Englebert *v.* Blanjot, 2 Whart. 240; Watson *v.* Bagaley, 2 Jones 167; Lucas *v.* Sunbury & E. Railroad, 8 Casey 464; Driesbach *v.* Becker, 10 Id. 152. This case is distinguishable from Griffin *v.* Rogers, 2 Wright 383; The York County Bank *v.* Carter, Id. 446; Fallon's Appeal, 6 Wright 235. The first was a pledge for money lent; the latter two were sales. The fact that Taylor was to have commissions shows that he was an agent to pay debts. These papers being an assignment, and not having been recorded within thirty days, it was void: Act of March 24th 1818, § 5, 7 Sm. Laws 132, Purd. 61, pl. 6. A mortgage to secure advances will not protect advances made after execution or attachment: Terhoven *v.* Kerns, Bank of Montgomery County's Case, *supra.*

The opinion of the court was delivered, May 11th 1869, by

SHARSWOOD, J.—Bernard Douredoure, at a time when he was unquestionably solvent, made a settlement of part of his estate for the separate use of his wife. He afterwards embarked in business and failed. He assigned all his estate for the benefit of his creditors. He then made an arrangement with William Taylor, to which the consent of the assignees and all his creditors was given, by which not only all the assigned but also the settled estates of his wife were to be conveyed to Mr. Taylor, who executed a declaration of trust, dated December 24th 1855, that he held the same upon condition that they were to be sold and the proceeds to be applied to repayment to him of the sum of $20,634, or thereabouts, already advanced and expended by him in purchase of debts and liabilities of said Bernard Douredoure, and of all other sums to be advanced by him for account of said Bernard Douredoure, and upon repayment to him of all sums so due,

[Taylor v. Cornelius.]

together with lawful interest, that he would convey all of the
property remaining unsold, that is to say, those formerly belong-
ing to Mrs. Douredoure, to her or to her order, and those for-
merly belonging to Mr. Douredoure, to him or his order.   The
plaintiffs below subsequently, in 1858, obtained a judgment in
the District Court against Bernard Douredoure, upon which an
attachment of execution was issued and served on William Tay-
lor, June 28th 1858, who pleaded *nulla bona*, upon the trial of
which issue the jury, under the instructions of the court, found
a verdict for the plaintiffs.   The learned judge charged that the
several conveyances to Taylor, and the declaration of trust by
him, were fraudulent and void as to the attaching creditors.   The
ground of this instruction seems to have been that they amounted
to an assignment for the benefit of creditors, and not having been
recorded within thirty days, were void under the 5th section of
the Act of March 24th 1818, Pamph. L. 287.   We think that
in this there was error.   Together they constituted merely a mort-
gage to Taylor, with a power of sale for the purpose of securing
advances already made or thereafter to be made for the use and
benefit of Douredoure.   For what purposes the advances were to
be made, or whether they were to be applied to their objects by
the mortgagor or mortgagee, does not appear to be material.   It
was a security for debts thereafter to be contracted by the ad-
vance of money: Griffin v. Rogers, 2 Wright 382.   There was
no trust for any creditor: the grantee could not be called on to
account except by the grantor.   Such a mortgage without any
power of sale in the mortgagee has often been decided to be
valid in Pennsylvania.   "It is now settled," says Mr. Justice
Huston, in Stewart v. Stocker, 1 Watts 140, "that a mortgage
or judgment may be given to secure a creditor, not only for a
debt due, but for responsibilities, which are contingent, nay, for
future advances:" Lisle v. Ducomb, 5 Binn. 585; Garber v.
Henry, 6 Watts 57; Parmentier v. Gillespie, 9 Barr 86; Moroney's
Appeal, 12 Harris 372.   The power of sale does not vary the
case: it creates no trust for creditors: it no more converts a
mortgage to secure future advances to be applied in payment of
the debts of the mortgagor into an assignment in trust for the
benefit of creditors than would such a power in an ordinary mort-
gage given to secure a loan.   The equity of redemption is sub-
ject to levy and sale on execution against the mortgagor, and the
proceeds of sale, after payment of the advances, to an attach-
ment in the hands of the mortgagee as garnishee.   Neither do
we regard the provision for commissions or compensation to the
mortgagee as impressing the instrument with the character of an
assignment within the Act of 1818.   Whether such a provision
ought to be pronounced usurious and therefore void, or whether a
court of chancery, which watches with jealousy all unusual agree-

ments between the mortgagor and mortgagee, clogging or embarrassing the equity of redemption, would consider it as oppressive and inequitable, and therefore not to be enforced, it is unnecessary here to determine. It does not render the mortgage void. We are dealing only with the question whether the instruments are within the 5th section of the Act of March 24th 1818. We are of opinion that they are not. This disposes of the first two specifications of error.

Assuming the assignment to be void, the learned judge proceeded to apply to the case the principle settled in Re Wilson, 4 Barr 431, that for payments made under the trust before an adverse claim the assignee by a void assignment is protected, but only for such; and on that assumption his ruling was undoubtedly correct. But if the conveyances to Taylor were not void, but constituted a valid mortgage to secure past and future advances, then his instructions to the jury as complained of in the 3d and 4th specifications were erroneous. If there was no personal assumption by Taylor of Douredore's debts—if he was not bound by contract to discharge them, then according to Terhoven *v.* Kerns, 2 Barr 96, and Bank of Montgomery County's Appeal, 12 Casey 170, advances made by him after a junior lien would be subject to it. But as mortgagee in possession he would be entitled to a credit for all sums paid on prior encumbrances, for taxes, premiums of insurance, repairs and other similar charges. If, on the other hand, Taylor was under obligation by contract to make advances, if he had bound himself personally to pay Douredoure's debts, he would be entitled to the security of his mortgage for the advances made by him for this purpose though subsequent to the junior lien: Parmentier *v.* Gillespie, 9 Barr 86; Moroney's Appeal, 12 Harris 72. The instruction to the jury therefore that Taylor was not entitled to credit for any payments made by him subsequent to the attachment, which were not contracted prior to that time, was erroneous, and the 3d specification of error must be sustained.

The 4th specification refers to a part of the charge not made the subject of exception below, and cannot therefore be noticed here.

The 5th specification is grounded on the 4th exception taken to the charge that Taylor the garnishee was a trustee for the benefit of creditors, and therefore had no right to apply insurance-moneys received by him to the rebuilding of houses owned by Douredoure. Undoubtedly if Taylor was such a trustee this instruction was correct; but as our conclusion is that he was not, but merely a mortgagee, it is equally clear that if before the date of the attachment he had, with the consent of the mortgagor, made contracts for the rebuilding of the property destroyed by

[Taylor *v.* Cornelius.]

fire, he had a right to apply the moneys received on the policies to such purpose.

The 6th specification of error is grounded on the 5th exception to the charge that the decree of the Supreme Court was not conclusive as between Taylor and the attaching creditors as regarded the land of Mr. Douredoure.  It appears that in 1862 a bill in equity was filed in the Supreme Court by Mr. and Mrs. Douredoure against Mr. Taylor, setting forth the several conveyances to and the declaration of trust by him, and that on December 1st 1860 an account had been stated by Mr. Taylor, showing a large balance in his favor, and that it was then agreed by him to accept in discharge certain portions of the real estate of Mr. Douredoure remaining unsold freed from the trust, and that he would convey to Mrs. Douredoure the remaining portions thereof, being part of the estate originally settled upon her.  The bill prayed for the specific execution of this contract.  It alleged also that Taylor, as part of the original arrangement, agreed and undertook to assume and pay the debts of the said Bernard Douredoure.  Taylor filed an answer admitting the allegations of the bill, but setting up several attachment executions against Douredoure which had been served upon him, and among others that now before us by Cornelius & Baker.  Thereupon a supplemental bill was filed, making all the attaching creditors parties, and among others, Cornelius & Baker appeared and answered, setting up that the original conveyances to Taylor were fraudulent and void as against them; that their attachments were valid and subsisting, and bound all sums of money in the hands of Taylor received under the alleged trust.

The cause was set down and heard on bill, answer and proofs, and a decree was made dismissing the bill as to the attaching creditors, but ordering that the contract should be specifically carried into execution; that the plaintiffs should execute and deliver to Taylor a release of certain property of Douredoure from the operation of the trust so that it should become absolutely his, and that Taylor should convey to Mrs. Douredoure what remained unsold of her original separate estate.  The learned judge below appears to have thought that so far as Mrs. Douredoure was concerned, this decree ought to be regarded as conclusive upon all parties; but that as between Mr. Douredoure, Mr. Taylor and Cornelius & Baker, that when the bill was dismissed as to the attaching creditors, the court in effect said they would not adjudicate on that question; consequently it remained open for the decision of the jury.  In this instruction we think that there was error.  The creditors were made parties in order that they might be heard if anything they had to say in opposition to the case made by the bill.  If that case was true in fact they had no just claim upon Mr. Taylor as garnishee; if not true, as they were afforded the opportunity of

[Taylor *v.* Cornelius.]

showing, the decree would have declared and established their rights and the bill been dismissed as to Mr. Taylor. Unless the release of Mr. and Mrs. Douredoure would give Mr. Taylor a good title, freed from the trust and freed from Douredoure's debts, there could have been no decree for specific performance against him. If the conveyances and declaration of trust were valid, and were intended not merely to secure advances, which he was at liberty to make or not to make at his pleasure, but on his agreement to assume personally and discharge all the debts and liabilities of Mr. Douredoure existing at the time of the agreement, then Mr. Taylor was clearly entitled to retain all the property in his hands, including that of Mrs. Douredoure, until he was fully indemnified and repaid. Mrs. Douredoure had voluntarily pledged her own separate estate for this purpose, and if either the conveyances were void as an unrecorded assignment, or it was a mere mortgage to secure advances to be made by Taylor at his pleasure—the court surely would not have decreed a conveyance to Mrs. Douredoure if the attachment was a subsisting lien and a personal claim against Taylor for any part of the fund which he had received and applied to his own advances. The decree was based on the merits of the whole case. The bill was dismissed as to the attaching creditors because no relief was asked against them—none was required. They were brought in to show cause against the decree, and if they could say nothing which would avail, to be bound by it. The decree that Mr. and Mrs. Douredoure should release Taylor, and that Taylor should convey to Mrs. Douredoure, notwithstanding the attachment, was an adjudication against them from which they could have appealed. " Where all the parties are brought before the court that can be brought before it," says Lord Chancellor Redesdale, " and the court acts on the property according to the rights that appear, without fraud, its decision must of necessity be final and conclusive:" Gifford *v.* Hart, 1 Sch. & Lef. 408. And, again: " In Hungerford's Case the creditors complained that the property had not been applied as it ought: it was objected that they should not come in under the decree and impeach the decree: it was answered that they might; for that if the decree contained in itself a wrong disposition of the property, they coming in as creditors had a right to appeal, because the decree bound their rights. In Osborn *v.* Usher, 2 Bro. P. C. 314, the same sort of principle was admitted if the right of a remainder-man or a person entitled to the estate in any way is bound by the decree, he must have a right to appeal from it, as well as the person against whom it is made:" Id. 489.

It is abundantly clear that to render a decree conclusive against a party, it need not be against him particularly by name. It is enough that it is adverse to his interest: Johnston *v.* Churchill,

[Taylor *v.* Cornelius.]

6 Litt. 177; Ogsburg *v.* La Farge, 2 Comst. 113; Wiswall *v.* Sampson, 14 How. (S. C.) 52; Hitch *v.* Davis, 8 Maryland 524. Whatever question was properly involved in the former suit, and might have been there raised and determined, is conclusively settled by the decree : Stockton *v.* Ford, 18 How. (S. C.) 418. To hold that the decree in this case is conclusive as to Mrs. Douredoure, so that the creditors have lost all claim on the estate conveyed to her, and yet is not conclusive as to Mr. Taylor, is to make the same decree dismissing the bill as to the attaching creditor—in the same breath—conclusive and inconclusive. If the assignment was void, or if it was a mere mortgage to secure future advances, the attaching creditors had a lien on the proceeds both of the estate of Mr. and Mrs. Douredoure, for both had been assigned, and the decree must be conclusive as to both or neither. The very questions now raised in this case were necessarily adjudicated in that—and all these parties were in court, and had a right and opportunity to be heard; and the decree is consequently conclusive upon them.

Judgment reversed, and *venire facias de novo* awarded.