## Lowber and Wilmer's Appeal.
## Wilson, Jones and Co.'s Appeal.

In the distribution of moneys raised by a sheriff's sale of goods, no other person than the defendant in the execution or his legal representatives will be permitted to object that a judgment on which another execution has been levied on the same goods, was erroneously entered, or the execution erroneously issued thereon.

Nor will the defendant or his representatives be permitted to do so in a collateral action or other manner than by suing out a writ of error or by making a direct application to the court in which the judgment is entered or from which the execution has been issued, to vacate it or set it aside.

APPEAL from the decree of the District Court for the city and county of *Philadelphia*, distributing moneys arising from the sheriff's sale of personal property under several executions.

The property levied on and sold on the 24th October 1839, consisted of machinery, &c., formerly the property of Robert W. Richardson & Co., a firm composed of Robert W. Richardson, Samuel R. Wood and Richard Blundin, and used by them in their factory at Manayunk, all the partners being equally interested therein. On the 20th May 1839 the partnership was dissolved by these partners by an agreement in writing under seal, and Richard Blundin and Samuel R. Wood, in consideration of the payment of the debts and liabilities of the firm by Robert W. Richardson, assigned all the estate, right, title, interest, trust, property, claim and demand whatsoever of Blundin and Wood in and to the estate and effects real and personal of the partnership to Richardson, upon condition he should pay the debts of the firm, and in case he should find it necessary to make an assignment, then he was authorised and empowered to make such preferences in payment of the partnership creditors as he might deem just and equitable, with power to use the firm name in legal proceedings, and a covenant by Richardson to pay the firm debts. This was recorded and published in the papers.

Prior to this time there were three judgments on which executions were subsequently issued and the respective plaintiffs claimed the funds. Wilson, Jones & Co. obtained judgment against Robert W. Richardson and Samuel R. Wood for a debt of Robert W. Richardson & Co. incurred prior to 20th May 1839, Blundin's name being omitted in the suit. The Pennsylvania Company for Insurance on Lives also had a judgment before the partnership was formed, against Richardson alone, on a warrant of attorney accompanying a mortgage executed by him. Lowber and Wilmer

obtained from Robert W. Richardson, Samuel R. Wood and Richard Blundin on the 13th October 1838, a confession of judgment signed by the three, for $3725.87; the plaintiffs at the same time by another writing reciting the confession and that the defendants had that day executed 17 promissory notes payable in various sums at intervals of 60 days, commencing on the 10th October and extending to the 10th June 1841, agreed that the said judgment should not be entered up or recorded unless there should be a failure of payment of either of said notes at the time or times they respectively fell due; which happening, then the said judgment was to be entered up and execution issue thereon.

On the 15th August 1839 Lowber and Wilmer issued their execution and delivered it to the sheriff, whose return was as follows: "Levied on and sold personal property for $11,016.91." On the 20th August 1839 the Pennsylvania Company for Insurance on Lives issued their execution and delivered it to the sheriff the same day, real debt $12,000. The sheriff returned as follows: "August 20th, 1839. Levied on the right, title and interest of defendant in the goods and chattels previously levied on by me by virtue of a writ of *fieri facias* to me directed out of this honourable court, of September Term 1839, No. 96, in which William T. Lowber and others are plaintiffs, and Robert W. Richardson, Samuel R. Wood and Richard Blundin, trading under the firm of Robert W. Richardson & Co. are defendants, and by virtue of said last-mentioned writ of *fieri facias,* and sundry other writs of *fieri facias* to me directed, sold the said goods and chattels for $11,016.91, as in my return to said writ of *fieri facias* to September Term 1839, No. 96, is set forth." Wilson, Jones & Co. issued their execution and delivered it to the sheriff on the 20th September 1839, real debt $1225.81, and the sheriff made the same return as the last, *mutatis mutandis.*

The other plaintiffs denied the right of Lowber & Wilmer, on the ground that their execution had issued in violation of their agreement, and Samuel R. Wood testified that the two first notes were taken up when due, but previous to the third becoming due Lowber & Wilmer made an agreement with him that the third and fourth should be withdrawn, and in lieu of them two notes should be given to come behind the last notes they held. Richardson drew these notes in blank for Lowber & Wilmer to fill up two days before the third came due, and the witness left them with Wilmer, it being distinctly understood the original agreement was to stand. Wilson, Jones & Co. contended that the property being the joint property of Robert W. Richardson & Co., and Lowber & Wilmer's claim being thus removed, they were first entitled to the proceeds. The Pennsylvania Company insisted that they were entitled because the property had previously been transferred to Richardson alone, and their execution being against him gave them the preference. There was a report of an auditor in the

court below, and also an issue tried on the subject of the agreement between Wood and Wilmer, which was afterwards deemed immaterial.

The court below decreed the money in dispute to be paid to the Pennsylvania Company for Insurance on Lives.

*C. Fallon*, for the appellants, cited *Stewart* v. *Stocker*, (13 *Serg. & Rawle* 204); *Lewis* v. *Smith*, (2 *Ibid.* 156); *Hauer's Appeal*, (5 *Watts & Serg.* 474); *Stewart* v. *Stocker*, (1 *Watts* 139); *Dyott's Estate*, (2 *Watts & Serg.* 557); *Meason's Estate*, (4 *Watts* 341); 2 *Bac. Ab.* 279; *Story Part.* 511, 527; 10 *Vez.* 347; *Ross Vend.* 60; *Gow Part.* 294; 22 *Wend.* 664; *Bell* v. *Newman*, (5 *Serg. & Rawle* 78); 2 *V. & B.* 172; 11 *Vez.* 3.; 6 *Vez.* 119; 6 *Mass.* 242; 6 *Pick.* 348; 16 *John.* 106; *Taylor* v. *Henderson*, (17 *Serg. & Rawle* 456); *Carter* v. *Connell*, (1 *Whart.* 398); *Lewis* v. *Williams*, (6 *Whart.* 264); *Deckert* v. *Filbert*, (3 *Watts & Serg.* 454).

*Williams*, contra, referred to 1 *Madd. Ch.* 583; *Campbell* v. *Shrum*, (3 *Watts* 63); *Meanor* v. *M'Kowan*, (4 *Watts & Serg.* 302); *Doner* v. *Stauffer*, (1 *P. R.* 199); 5 *John. Ch.* 320; *Hickman* v. *Caldwell*, (4 *Rawle* 380); *Corlies* v. *Stanbridge*, (5 *Ibid.* 290); *Campbell* v. *Kent*, (3 *P. R.* 72); *Castle* v. *Reynolds*, (10 *Watts* 51); *Azcarati* v. *Fitzsimmons*, (3 *Wash. C. C.* 134); *Cary Part.* 166, 201; *Collyer Part.* 514.

The opinion of the Court was delivered by

KENNEDY, J.—It is unnecessary to notice all the different points raised and discussed in this case, as there is one which, when rightly decided, will dispose of the whole of it. Because it is clear, if it was competent only for the defendants named in the execution in favour of Lowber & Wilmer and for no others to object to the validity of it, that the decree of the court below must be reversed and a decree passed in favour of Lowber & Wilmer, who sued out and placed their execution first in the hands of the sheriff. The execution issued in favour of these gentlemen was founded upon a judgment entered in their favour in a court of competent jurisdiction, apparently regular as it would seem from the record, and such as justified the issuing of the execution. In *Stewart* v. *Stocker*, (13 *Serg. & Rawle* 199), it was held that an execution issued before the stay of execution had expired was irregular but not void, and that its validity could not be called in question by another execution creditor, who sued the sheriff for the proceeds. That case was substantially pretty much like the present. There the judgment upon which the execution was issued, was given, as the judgment was here, to secure the payment of several notes given by the defendants in the judgment to the plaintiffs in liquidation of a previous debt owing by them and made payable within limited

periods from their respective dates; and the execution was sued out before a failure on the part of the defendants to pay any of their notes at maturity had taken place; yet this court held the execution good against a subsequent execution sued out regularly by Mr Stocker against the same defendants and placed in the hands of the sheriff to be executed, and that it was not competent for Mr Stocker or any other execution creditor to object to or take advantage of the irregularity that existed in issuing the first execution. The existence and justness of the debt was not questioned there, nor has it been here; so that no complaint was made against the issuing of the execution on the ground of fraud, a thing that undoubtedly any execution creditor would have a right to make, and the court would be bound to hear him. But where the objection extends no further than that the judgment upon which the execution has been issued has been erroneously entered or obtained, or the execution erroneously issued thereon, no other person than the defendant therein or his legal representatives, will be permitted to make it. Nor will they be permitted to do so in a collateral action or other manner than by suing out a writ of error or by making a direct application to the court in which the judgment is entered or from which the execution has been issued, to vacate or set the same aside. This course is settled by a train of authority in this State which cannot be contested or resisted. Besides the case of *Stewart* v. *Stocker* already cited, to show that it is so, I will refer to 2 *Serg. & Rawle* 155–6; 1 *Watts* 139; 4 *Watts* 341; 2 *Watts & Serg.* 557; 5 *Ibid.* 460, 474. From which it will likewise appear that a contrary principle laid down by the late Mr Justice WASHINGTON in *Azcarati* v. *Fitzsimmons*, (3 *Wash. C. C.* 134), has been most clearly and decidedly overruled.

The decree of the court below reversing the report of the auditor in favour of Lowber and Wilmer is therefore reversed; and it is further decreed by this court that the amount of the debt and interest appearing to be due to them at the time of the sale made of the goods by the sheriff, be paid to them out of the moneys in the court below, after deducting all costs which have accrued, including the costs of this appeal; and that the residue of the money so made and remaining there be paid to the Pennsylvania Company for Insurance on Lives, in satisfaction *pro tanto* of their debt.

Decree reversed.