74   198
174   508

## Sheetz *et al. versus* Wynkoop *et al.*

1. An execution was issued against three on a joint judgment; one being in the army, the court, under the Act of April 18th 1861, stayed the execution as to him, but refused to quash the writ, and allowed the execution to go against the other two: *Held* to be correct.

2. The undivided interests of two of the defendants in land held jointly by all were sold under the execution. *Held*, that the sale passed a good title to those interests.

3. The exemption under the Act of 1861 was a *personal* privilege to the soldier, and not to benefit his co-debtors.

4. The rule that process to enforce a joint judgment must be joint, being technical, will not be allowed to be used so as to work injustice.

5. Process forbidden by law is void, and a sale under it conveys no title.

6. If one of several plaintiffs die after judgment, upon suggestion of the death, execution may be sued out by or against the survivors; or execution may be sued out by or against the survivors in the names of all, but it can be executed only against the survivors.

7. Application was made by the defendants under the Stay Law of May 21st 1861, to stay execution on fi. fas. issued against them; no notice was given to the plaintiffs in the judgment under which the land was sold; the court directed a stay "on all judgments," but no entry of the order was made on the docket. The execution was issued before the expiration of the stay. *Held*, that it was not void, but erroneous, and might have been set aside, but could not be questioned in an ejectment by the defendant for the land.

8. The Acts of April 18th 1861 and April 22d 1822 (Process against Soldiers), construed.

9. Cadmus *v.* Jackson, 2 P. F. Smith 295, distinguished.

May 29th 1873.   Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Lebanon county:* No. 53, to May Term 1873.

This was an action of ejectment, brought March 12th 1872, in the Court of Common Pleas of Schuylkill county, by Samuel Sheetz and William Frederick Breitenbach, a minor child of William S. Breitenbach, deceased, by his guardian, against John E. Wynkoop and E. W. Wynkoop, Augustus W. Huber, Zacharias Batdorf and the Star Iron Company.

By virtue of a special Act of Assembly, the case was, on the 10th of June 1872, removed to the Court of Common Pleas of Lebanon county.

The plaintiffs claimed to recover the undivided two-thirds of a body of land, with iron works and other buildings; being in Schuylkill county and known as "The Stanhope Furnace Property," containing 1215 acres. A disclaimer of Huber to any part of the premises was filed February 3d 1873; and disclaimer of Batdorf to "the furnace and tract on which it is erected, not exceeding 200 acres," was filed February 17th ———.

The defendants in interest were the Wynkoops.

The tract had belonged to William S. Breitenbach and John R.

[Sheetz v. Wynkoop.]

Breitenbach and Samuel Sheetz, partners in the manufacture of iron, and by their articles of partnership, it was stipulated that the land should be partnership property.

The case was tried February 17th 1873, before Pearson, P. J.

The foregoing was given in evidence or admitted. Under objection and exception the defendants gave in evidence a judgment in the Common Pleas of Schuylkill county, Simon Cameron and others against the Breitenbachs and Sheetz, for $2500, entered February 15th 1860 and assigned October 22d 1860, to Augustus W. Huber and William A. Huber. A fi. fa. was issued on this judgment to March Term 1861; a large number of executions were issued to the same term on other judgments. · The real estate extended at a rent of $10,000 per annum: at which rent the defendants gave notice that they would retain the property.

On the 11th of June 1861, John R. Breitenbach presented his petition to the Court of Common Pleas of Schuylkill county, setting forth the numerous fi. fas. (which he specified, not including Cameron v. Sheets above stated), one being Waterman et al. v. Sheetz et al., had been issued against the firm, and setting forth numerous judgments, including the above-stated judgment of Cameron v. Sheetz and mortgages, that were liens against their property, and that they all amounted to less than $50,000 ; that the defendants' personal property had been levied on under the executions, and advertised for sale on the 12th of the same month ; that if a sale should be made the personal property would be greatly sacrificed. He further set out that the real estate of the defendants as described in a schedule attached to the petition, was worth at a fair valuation from $70,000 to $80,000. The prayer was that the court would stay or set aside the executions as provided by the Act of May 21st 1861 (Pamph. L. 770). No notice of this application was given to the owners of the Cameron judgment.

The act provided for a stay of execution for six months, under the circumstances set out in the petition, upon conditions mentioned in the act.

Upon this petition the court ordered a stay of execution and an adjournment of the sheriff's sale until the 20th of June, and appointed the 19th for a further hearing of the petition. On that day the court ordered a stay under the provisions of the act, "and also that execution do stay on the judgments." The order was endorsed on the petition but no entry of it was made on the docket.

The rent under the extension not having been paid, a venditioni was issued on the Cameron judgment on the 23d of January 1862.

On the 3d of March 1862, John R. Breitenbach, one of the defendants in the execution, filed an affidavit averring that he was and had been in the military service of the United States since the 27th of August preceding, under a requisition of the President of the United States and an order from the Governor of

[Sheetz *v.* Wynkoop.]

Pennsylvania, by whom he had been commissioned as captain, &c., and was bound to remain until the end of the war or until honorably discharged.

Upon this affidavit, J. R. Breitenbach moved the Court of Common Pleas of Schuylkill county under the 4th sect. of the Act of April 1861 (Pamph. L. 409), to quash the venditioni ; on the 6th of March the court stayed the writ as to J. R. Breitenbach, "it appearing that he is an officer in the United States army under a requisition of the government," and refused to quash the writ. The · joint property of W. S. Breitenbach and Sheetz was sold by the sheriff to A. W. & W. A. Huber. The sheriff's deed, dated March 22d 1862, was for the real estate, without stating it to be for the two-thirds.

By divers conveyances the title to two undivided thirds came to "The Star Iron Company," on the 26th of January 1865.

On the 26th of March 1867, John R. Breitenbach commenced an ejectment in Schuylkill county against The Star Iron Company for the premises, and on the 9th of February 1872, he obtained a verdict for one-third of the land.

The plaintiff in rebuttal gave evidence from the record that no affidavit of non-payment of the semi-annual rent was filed before issuing the venditioni.

The court, stating the facts as above given and referring to the venditioni under which the land was sold, charged :—

* * * " The question presented for our decision is, did this sale pass the title of William S. Breitenbach and Samuel Sheetz ? If it did, the plaintiff cannot recover. It is said that where a judgment is joint the execution must follow the judgment and issue against all of the defendants. This may be conceded, yet in the present case the fi. fa. and vend. ex. both issued against all, but on the application of one defendant for a reason peculiar to himself, the court stayed the writ as to him, *but refused to quash it.* This it is said was a grave error—that the court was bound to quash the writ. This is claimed under the 70th sect. of the Act of 2d of April 1822, 7 Sm. L. 638, 2 Br. Purd. 1061, pl. 182, and it is also contended that the Act of 18th of April 1861, Pamph. L. 409, sect. 4, 2 Br. Purd. 1061, pl. 183, which says that no civil process shall issue or be enforced against any person mustered into the service of the state or United States until thirty days after he shall have been discharged. This latter statute does not require the writ to be quashed, but the court should certainly under its provisions *take measures to relieve the party* in service. This was done here, and as we conceive, the proper remedy was applied. We cannot believe that the legislature ever intended that where many persons are bound in a judgment the process should be stayed or set aside as to all because one was in service. As we would apply the statute, the writ must issue on the judgment against all, the joint or several

property of each could be levied on, but the court would relieve the one entitled to a special exemption by forbidding a sale of his interest under the writ.

" The legislature of 1861 could not have known of the Act of 1822, or considered it in force, else they would not have enacted a law giving much less relief than the one in existence, passed when there was no apparent occasion for such a provision in a time of profound peace.    But as the law never was repealed, we will treat it as in full force, yet like all other statutes it must be construed according to what we conceive was the intention of the legislature ; we must not stick in the letter—*qui hæret in litera hæret in cortice.* In enacting such statutes the legislature has in view a judgment of one person only, and designs to relieve his property—did not provide for the case of an obligation against several.    It never was intended that because a man was bound in a bond with others that they could not be sued, and the writ be quashed as to him because he was in service, or if a joint judgment was entered against a dozen men, the execution must be quashed because one was in the army.    It is quite sufficient when that one is relieved—such is the object and intention of the statute.    To relieve all the co-obligors would be going beyond the intention of the legislature. But suppose we are in error as to the proper construction of this law, we cannot correct the errors of the court of Schuylkill county. That court made a decision refusing to quash the writ.    We are not the tribunal to review it, nor can we treat it as a nullity ; if wrong, the defendants had remedy by writ of error.    The process after this decision was not *void,* it was at most voidable and must be reversed by the Supreme Court.    It is said that a great error was done to these defendants by the sheriff proceeding to sell their property on the old advertisement without new notice, and selling as if it was the estate of all when one was discharged.    That would look more like doing injustice to the purchaser, *though the matter seems to have been perfectly understood.* ' Taking it for granted that it would be an injury, yet the proper mode of redress was to apply to the court to set aside the sale before the sheriff's deed was acknowledged.    That, in our opinion, cures all irregularities.    'It will not cure the want of a judgment or *execution.*    Here both exist.    The party must seek redress at a proper time and before the proper tribunal.

" It is said, however, that the execution issued here, and the sale was made under it, in violation of the Act of May 21st 1861, relating to the stay of executions.

" That statute gives a stay for one year on all judgments then existing on the docket, as also those which shall be afterwards entered.    On the 11th of June 1861, John R. Breitenbach by his petition asked for a stay of execution under the provisions of that law, setting forth that the personal property was levied on and

[Sheetz *v.* Wynkoop.]

likely to be sacrificed. He obtained an order suspending the sale on testatum writs and also on judgments, and from the language of the court it probably was intended to apply to all executions which might be issued on all these judgments contained in the list attached to that record. Waiving for the present the necessity of having the order made in each particular case, we understand it that *this judgment was not included in the list.* They are not all described by number and term, but only by the name of the plaintiffs and when assigned by that of the *cestui que use.* This one stood for the use of another person and was for a different amount. We have not had the advantage of inspecting the record but as read this one is not embraced. It is said, however, that when such an order is made on the record every judgment-creditor is bound to take notice of it and issue at his peril. We think differently, and that the debtor must apply for his stay of execution and make proof before the court of the value of his property, and show that it comes within the provisions of the statute, or give the security as required by law. That the creditor is entitled to notice of such application to enable him to appear before the court and controvert the facts, and show that it is of less value or the bail insufficient. The order made as to others could not bind this judgment-creditor, it is only obligatory on those notified. * * * So far from John R. Breitenbach claiming a stay of execution on the judgment in this case, on the 7th of June 1861, he gave notice that he elected to take the property at the rental of $10,000 a year as fixed by the inquest, and the same was agreed to by the plaintiffs. On this the defendants obtained the stay until January 7th following, when on affidavit filed that the rental was not paid an execution issued. During all of this time there was no intimation that a stay was claimed under the Act of 1861, but on the contrary the defendants apparently expected to have a much longer stay by paying the annual rental. Under these circumstances we certainly cannot declare the sheriff's sale void, more especially as no motion was made to set aside the process, or objection taken to the acknowledgment of the sheriff's deed. It is too late to controvert the sheriff's sale after ten years and after the property has passed into the hands of innocent holders, so far as shown on this trial at a cost of over $100,000, for two undivided third parts of the premises.

"Although as a general rule the fi. fa. and vend. ex. must follow the judgment, where the one is joint the other must be also. Yet in the case of an infant, the court will set aside the process as to him, but permit it to go on as to the others and sell their property. It is a personal privilege conferred on the infant, as this is as to the soldier in service.

"Lastly, it is said that the sheriff cannot divide a tract of land in making a sale. This is true, a levy cannot be made on a part of

[Sheetz v. Wynkoop.]

a tract, yet we are not aware of any decision that the whole of an undivided share cannot be sold, or that the interest of one tenant in common cannot be levied on and a good title made thereof by sheriff's sale, without disposing of the interest of the other tenants in common.

" On the uncontroverted facts in this case we are of the opinion that the title of W. S. Breitenbach and Samuel Sheetz passed by the sheriff's sale and deed, and therefore they are not entitled to recover, consequently your verdict must be in favor of the defendants."

The verdict was for the defendants.

The plaintiffs took a writ of error, and in eleven specifications assigned the charge for error.

*W. M. Derr* and *Thompson* (with whom was *J. R. Breitenbach*), for plaintiffs in error.—In a joint judgment the execution must follow the judgment: Grenell *v.* Sharp, 4 Whart. 344; Shaffer *v.* Watkins, 7 W. & S. 219; Bartlett *v.* Pentland, 1 B. & Ad. 703. The venditioni exponas was void, under the Act of April 18th 1861, there being no authority to issue it: Cadmus *v.* Jackson, 2 P. F. Smith 306. The sheriff cannot sell an interest different from that levied on: Grubb *v.* Guilford, 4 Watts 223; Hoffman *v.* Danner, 2 Harris 25. A sheriff's sale to plaintiff in the execution, where there has been no advertisement, confers no title to him: Gibbs *v.* Neely, 7 Watts 305. The *whole* interests of the defendants in the execution in one tract must be levied on: Carpenter *v.* Cameron, 7 Watts 60. The sale of two undivided interests was void, and no title passed: Mitchell *v.* St. Maxent, 4 Wallace 242.

*W. R. Smith* and *F. W. Hughes* (with whom was *J. Funck*), for defendants in error.—The Act of 1822 applies to a drafted soldier: Breitenbach *v.* Bush, 8 Wright 313. A second stay could not be granted: Billmeyer *v.* Evans, 4 Wright 324.

The opinion of the court was delivered, January 2d 1873, by

WILLIAMS, J.—If the plaintiff's title to the land in controversy was divested by the sheriff's sale, under which the defendants claim the ownership, they were not entitled to recover; and the court below was right in giving a binding direction to the jury to find for the defendants. The execution, on which the sale was made, followed the judgment. It was issued against all the defendants. The court refused to quash the writ, but ordered it to be stayed, so far as regards John R. Breitenbach, "it appearing to the court that he is an officer in the United States army under a requisition of the government." Thereupon the sheriff sold the interests of the other defendants in the land levied on, and acknowledged and delivered a deed therefor to the purchaser.

[Sheetz *v.* Wynkoop.]

If the execution was void, the sale was a nullity. But if it was not void, the sale divested the plaintiff's title. Though the writ may have been erroneously issued, if it was not absolutely void, the error was cured by the acknowledgment of the deed, and the purchaser took a valid title under it. There was nothing on the face of the record showing that the plaintiffs in the judgment had no right to issue the writ. It may be conceded that it was void as against John R. Breitenbach, because forbidden by the 4th section of the Act of 18th April 1861 (Pamph. L. 409), which declares that " no civil process shall issue or be enforced against any person mustered into the service of this state, or of the United States, during the term for which he shall be engaged in such service, nor until thirty days after he shall be discharged there-from." But if it was void as to him, was it void as against his co-defendants ? It was not forbidden as against them, either in express terms or by necessary implication. The act must have a reasonable construction; and in order to ascertain its meaning, regard must be had to the purpose and intent of the legislature in its enactment. Manifestly it was inte led for the relief and protection of persons mustered into the service of the state or of the United States, for the purpose of aiding in suppressing the rebellion and maintaining the Union; and it was not intended for the benefit of any other class of persons. Its sole object was to exempt them from civil process while engaged in such service, and for thirty days after their discharge. It was intended to prevent their rights and property from being sacrificed while absent from home in the service of the government; but it was no purpose of the act to exempt their co-obligors or joint debtors from liability to process in the meantime. The exemption was intended as a personal privilege of the soldier. Why, then, should the co-defendants of John R. Breitenbach take any benefit or advantage from the provision ? If the execution was forbidden. as against him because he was in the military service of the government, what is that to them, if it was not forbidden as against them? It is clear that they are not within the letter of the act, for they were not mustered into the service of the state, or of the United States; nor are they within its spirit, for its sole purpose was the protection of the rights and property of the soldier. If the execution was forbidden and void as against the one defendant, it does not follow that it was illegally issued and void as against the others. The rule, that when the judgment is joint the process to enforce it must be also joint, is technical, and has more of form than substance in it; and the court, from which the process issues, will take care that it be not used so as to work injustice : Mortland *v.* Himes, 8 Barr 265. If the judgment had been against John R. Breitenbach alone, it would unquestionably have been the duty of the court to set aside or quash the execution. But if the court had

[Sheetz *v.* Wynkoop.]

simply stayed the writ, none but the defendant could have complained or taken advantage of the error. And if the plaintiffs in the judgment had the right to sue out execution as against the other defendants, the court was not bound to quash the writ as regards them, and no injustice was done to John R. Breitenbach by the order staying the execution as to him, and refusing to quash it. This case is clearly distinguishable from Cadmus *v.* Jackson, 2 P. F. Smith 295, upon which the plaintiffs in error rely. There the judgment was not joint but several; and the execution, on which the land was sold, issued after the defendant's death without any warning to his personal representatives. It was held that the execution was void, because forbidden by the 33d section of the Act of 24th February 1834, and consequently that the purchaser took no title under it. The principle upon which the decision rests is this: process forbidden by law is void, and a sale under it conveys no title. But the principle has no application in this case. If the execution as against John R. Breitenbach was void because forbidden by the Act of 1861, his interest in the land levied on was not sold, and, therefore, the question, whether a sale under it would have divested his title, does not arise. The question here is, whether the execution as against the other defendants was void and the sale a nullity. If the judgment in Cadmus *v.* Jackson had been a joint judgment, and the writ had been stayed as to the deceased defendant, can there be a doubt that the sale of the surviving defendants' interest in the land would have been good, and that their title would have vested in the purchaser on the acknowledgment and delivery of the sheriff's deed? Where there are several plaintiffs and defendants, and some of them die after final judgment and before execution, upon suggesting the death upon the roll, execution may be sued out by or against the survivors by name; or execution may be sued out by or against the survivors in the names of all, but it cannot be executed as against the survivors only: 2 Arch. Pr. 294–300; 2 Saund. 72 K.

If the plaintiffs in the judgment might have sued out execution against the other defendants upon suggesting the fact that John R. Breitenbach was an officer in the United States army, as doubtless they might, the execution was not void as to them. If it erroneously issued against all the defendants, because one of them was exempt from process, the error was cured by the order staying the writ as to him, and by the acknowledgment of the sheriff's deed; and the validity of the proceedings cannot be collaterally questioned in this action. The execution, therefore, was not void under the Act of 18th April 1861; nor was it void under the prior Act of 2d April 1822, if this act was not superseded and supplied by the Act of 1861. There is nothing on the record showing that John R. Breitenbach was called into actual service, as an officer or private of the militia, under a requisition of the President of

[Sheetz *v.* Wynkoop.]

the United States, or in pursuance of the orders of the governor of this Commonwealth. On the contrary, the record shows that he was not an officer or private of the militia, but an officer of the United States army; and if so, he was not within the provisions of the act. But if he was within its provisions, and entitled to the exemption from execution and other process for which it provides, it is clear that his co-defendants were not, and there is nothing in the act to prevent execution from issuing on the judgment as against them; and they cannot complain that the court stayed the writ as against their co-defendant not liable to process, if it might lawfully issue as against them. The execution, then, was not void under either act, and if it was voidable because forbidden as against one of the defendants, the plaintiffs in this action can take no advantage of the error.

But it is contended that the execution was void because the defendants had obtained an order staying execution on the judgment under the Act of 21st May 1861 (Pamph. L. 770), and the execution was issued before the expiration of the stay. But there is nothing on the face of the record showing that the defendants had obtained any such order. On the contrary the record shows that the defendants had elected to retain the property levied on at the annual valuation fixed upon it by the inquest, and that the plaintiffs were entitled to execution, when the writ was issued, in default of payment of the half-yearly instalment for more than thirty days after it fell due. It is true that in the case of Waterman, Young & Co. *v.* Breitenbach, Sheetz & Co., the defendants applied for an order staying sundry executions against them, of which a list is given, and to which is also appended a list of the judgments which were liens on their real estate, including the judgment upon which the land in question was sold; and upon the hearing of the application the court ordered and directed " that all the writs of fi. fa. issued out of the Common Pleas of Schuylkill county against the said defendants be stayed under the provision of the Act of Assembly of May 21st 1861. * * * And also that execution do stay on the judgments." Whether the order was intended to embrace all the judgments which were liens on the defendants' real estate, or only those upon which executions were issued, does not clearly appear. No notice of the application for stay was given to the plaintiffs in the judgment upon which the sale was made, and the defendants did not move the court to set aside the execution on the ground that the judgment was embraced in the order and the stay had not expired. If the order was intended to embrace the judgment, the plaintiffs should have had notice of the application; and the order should have been made part of the record, or some note or memorandum of it should have been entered on the docket. In the absence of any such entry there was nothing on the record showing that the plaintiffs were

[Sheetz v. Wynkoop.]

not entitled to sue out execution. But if the order of stay was intended to embrace the judgment, the execution was not void. If the writ issued before the stay expired, it was erroneously issued, and would have been set aside by the court on the defendants' application, but it does not follow that it was a nullity. The most that can be said against it is that it was irregular and erroneous, but if it was, its validity cannot be questioned in this action. Until set aside or reversed it must be regarded and treated as valid: Stewart v. Stocker, 13 S. & R. 199; s. c. 1 Watts 135; Lowber's Appeal, 8 W. & S. 387; Wilson v. Howser, 2 Jones 107. There is then, as we have seen, nothing on the record showing that the execution was prematurely issued, and if it did appear that the defendants were entitled to a stay, the validity of the writ cannot be collaterally questioned in this action. As said by Kennedy, J., in Lowber's Appeal: " Where the objection extends no further than that the judgment, upon which the execution has been issued, has been erroneously entered or obtained; or the execution erroneously issued thereon, no other person than the defendant therein or his legal representatives will be permitted to make it. Nor will they be permitted to do so in a collateral action or other manner than by suing out a writ of error or by making a direct application to the court in which the judgment is entered, or from which the execution has been issued, to vacate or set the same aside. This course is settled by a train of authority in this state which cannot be contested or resisted." As the execution was not a nullity, it follows that the court rightly instructed the jury that the plaintiffs are not entitled to recover, and consequently their verdict must be in favor of the defendants.

Judgment affirmed.