## Manlove v. McDermott.

*David H. Frantz* and *Dickson, Beitler & McCouch*, for plaintiff.
*Bernard J. Kelley* and *John J. McDevitt, Jr.*, for defendant.

FINLETTER, P. J., June 11, 1931.—A summons assumpsit was served upon the defendant at the League Island Navy Yard, where he was upon duty as a lieutenant in the United States Navy.

A petition to determine the jurisdiction of this court and for a rule to set aside the service is before us.

Two questions arise: (1) Is the service bad because made within land ceded to the United States? And (2) has the defendant immunity from service of civil process because he is an officer of the United States Navy upon duty at the Navy Yard?

He came here upon a United States vessel sent to the Navy Yard to be taken out of commission. The ship was docked at the Yard, and the process of taking out of commission was in progress when the writ was served.

1. With regard to *locus* of the service, we think it sufficient to say that the cession of the Navy Yard to the United States Government was regulated by certain Acts of Congress and of the Pennsylvania Assembly, under the terms of which the right to serve civil process, issuing out of Pennsylvania courts, was reserved by the state, and the cession of territory accepted subject to that reservation.

The Pennsylvania Acts of February 10, 1863, P. L. 24, and April 4, 1866, P. L. 96, gave the consent of the state to the acquisition of the Navy Yard by the United States. The latter act contained the following: "Nothing herein contained shall be construed to interfere with the service of civil, or criminal, process, within the premises hereinbefore mentioned."

The Act of Congress of February 18, 1867, 14 Stat. at L. 396, ch. 46 (1867), authorized the acceptance of League Island for naval purposes by the United States.

On December 23, 1868, the Secretary of the Navy executed a "Certificate of Acceptance," and caused it to be recorded in the Office of the Recorder of Deeds of Philadelphia County. The certificate recited that the land was accepted and the certificate given for recording under the provisions of the Acts of 1863 and 1866, cited above.

So that the right to serve process is a condition of the grant.

It was said in Fort Leavenworth R. R. Co. *v.* Lowe, 114 U. S. 525, 533, by Mr. Justice Field for the Supreme Court of the United States that: "The reservation, which has usually accompanied the consent of the States, that civil and criminal process of the State Courts may be served in the places purchased is not considered as interfering in any respect with the supremacy of the United States over them; but is intended to prevent them from becoming an asylum for fugitives from justice." See, also, Allegheny County *v.* McClung, 53 Pa. 482; Bank of Phœbus *v.* Byrum, 110 Va. 708, 67 S. E. 349; United States *v.* Cornell, 2 Mason (U. S.) 60.

2. It is argued that defendant, being on active duty, is immune from service. The Act of April 18, 1861, P. L. 408, section 4, and the decisions under it, have a bearing on the question before us. That act provided that "no civil process shall issue, or be enforced against any person mustered into the service of this state or of the United States, during the term for which he shall be engaged in such service," etc.

This language is broad enough to cover literally the instant case. Obviously, however, it was a war measure, and plainly, too, it violates the obligation of contracts by taking from them all remedy, if it is given an unlimited application. And so it has been held to be unconstitutional in its application to all cases in which it would have the effect of taking all remedy from parties to a contract, and constitutional in so far as it has but a limited effect upon the remedy.

Put specifically, where the person who seeks immunity under it is enlisted for an indefinite term of service, the act has been held to be unconstitutional. But where the term of service is limited, it is held constitutional, being in effect a limited stay of remedy, and not a complete deprivation of it: Breit-

enbach *v.* Bush, 44 Pa. 313; Clark *v.* Martin, 49 Pa. 299; Irvine *v.* Pumroy, 5 Phila. 329; Sheetz *v.* Wynkoop, 74 Pa. 198; Snyder *v.* Ayers, 46 Pa. C. C. 60; Brennan *v.* Holmes, 66 Pits. L. J. 88; Davis *v.* Detwiller, 28 Dist. R. 113.

The disposition of two of these cases, Breitenbach *v.* Bush, *supra*, and Clark *v.* Martin, *supra*, will show the tendency of all. In the first, the person claiming immunity was an army captain commissioned for three years. He was allowed immunity, the court treating the Act of 1861 as a stay law, and holding that such a law is constitutional if the stay "is definite and not unreasonable, but unconstitutional if the stay is for an indefinite time, or for a time that is unreasonable, though definite." The court said the period of three years was "longer than can be justified, except under most peculiar and pressing circumstances." But it held that the emergency of the Civil War came within that description. In the second case, Clark *v.* Martin, *supra*, the court held the act unconstitutional, in its application to a soldier whose term of enlistment was for the duration of the war.

The defendant's commission as a lieutenant in the navy is without limit of time.

There is, however, another consideration, which is indicated by the decision in Breitenbach *v.* Bush, *supra*, where the Supreme Court gives to the war emergency the effect of permitting a longer stay than otherwise would have been granted. That consideration is the propriety of relieving soldiers and sailors from interference by process when upon active war duty. It is an immunity having no other basis than public policy and the necessities of the emergency.

The principle was recognized in Land Title and Trust Co. *v.* Rambo, 174 Pa. 566, where a militiaman, enlisted under the act regulating the National Guard, April 13, 1887, P. L. 23, 48, had gone, under orders of the Governor of the state, his military chief, to another county than his residence to participate in the annual encampment of the National Guard, required by the act of assembly to be held.

The Supreme Court held that there was no express immunity contained in the act; but "we think it ought to be sustained on the broader ground that public policy . . . forbids the use of civil process under the circumstances here shown.

"The 31st section of the National Guard Act declares 'There shall be held, once in each year, an encampment of the National Guard, not to exceed fourteen days duration,' " etc.

It was also emphasized that the defendant was present at the camp under orders disobedience to which would subject him to court martial, that it was the policy of the statute to organize a military force, and in time of peace to promote its efficiency by annual encampments, and, finally, it was said: "We have no notion . . . that mere membership of the National Guard exempts from the ordinary duties and liability of its citizens." We gather from this that the immunity was based on the extraordinary emergency, and no doubt (though no reference is made to it) on the short limitation of the service, and, consequently, of the immunity, and on the importance of the annual encampment in relation to the whole purpose of the National Guard Act to create during peace a trained army. As against this, the short stay imposed upon the plaintiff, two weeks out of the year, was insignificant and deprived him of no substantial remedy.

Applying what we have said to the defendant, there was no special emergency which brought him to the Navy Yard. He came on a vessel in the

course of duty. But, except when he is on shore duty, he is always aboard ship, and always there under order. To exempt him because he was under orders to dismantle his ship would be to exempt him forever, for his commission is without time limit, and he goes nowhere but under orders.

As was pointed out in argument, if the defendant is exempt from suit upon his contracts, no merchant who sold him a suit of clothes on credit, and no citizen injured by his negligence, would have a remedy. This may be endured in war or analogous emergencies, but as a rule in times of peace and under ordinary circumstances cannot be tolerated.

The rule to set aside the service of the summons is discharged.