## Zarlinsky v. Laudenslager

*James L. Weirbach, Theodore R. Gardner, Martin H. Philip* and *James G. Kellar,* for plaintiffs.

*Samuel D. Frederick,* for defendant.

HENNINGER, P. J., December 16, 1957.—Defendant has moved for judgment of non pros and for judgment on the pleadings after complaint, answer with new matter and reply and new matter, which pleadings, for the purpose of this motion, establish the state of facts as below outlined. On December 29, 1950, plaintiffs, husband and wife, suffered damages in a collision of automobiles, which collision, for the purposes of this discussion, was caused by defendant's negligence. Plaintiffs brought suit therefor by praecipe for summons on September 29, 1952. Almost three years later, on September 20, 1955, the sheriff made return of non est inventus on this summons.

On June 16, 1955, plaintiffs filed their complaint which was served on defendant by the sheriff of Monroe County on June 24, 1955. On July 12, 1955, Snyder, Wert and Wilcox entered their appearance for defendant.

On September 26, 1955, defendant filed an answer denying negligence and pleading the statute of limitations as new matter. On October 17, 1957, plaintiffs filed a reply averring that on May 19, 1953, plaintiffs' attorney and one Cocklin "representing the defendant," had an understanding that no further action would be taken until defendant returned from military service and made his whereabouts known to plaintiffs, that defendant entered military service on February 19, 1952, and was discharged therefrom on December 11, 1953, that plaintiffs were without any knowledge of defendant's whereabouts from February 12, 1953, to May 1955, despite diligent search, because defendant sought actively to conceal his whereabouts both during military service and thereafter and that plain-

tiffs acted immediately upon discovering defendant's whereabouts.

It is interesting to note that the reply was sworn to about a year after plaintiffs were in possession of depositions taken of defendant in which he stated that he spent his entire naval career at Bainbridge, Md., that the first three months after discharge were spent at his father's home in Allentown and that since some date in February, 1954, he has lived continuously in Stroudsburg. He was not asked whether he had attempted to conceal his whereabouts.

Plaintiffs have conceded that unless excused therefrom by other reasons, an alias writ of summons or a complaint in lieu thereof in trespass cases for bodily injury must issue within two years after a prior unserved summons or be barred by the statute of limitations: Jones v. Orum, 5 Rawle 249, 254; Bovaird & Seyfang Mfg. Co. v. Ferguson, 215 Pa. 235; Prettyman v. Irwin, 273 Pa. 522, 526.

Plaintiffs rely upon two circumstances to toll the statute between September 29, 1952, when the unserved summons was issued and June 16, 1955, when the complaint, served June 24, 1955, was filed. These are: (1) The promise made on May 19, 1953, by the insurance adjuster to negotiate and to produce defendant after his discharge from the service; and (2) a tolling of the statute of limitations by reason of the Act of April 18, 1861, P. L. 408, sec. 4, 51 PS §21, which reads as follows:

"No civil process shall issue, or be enforced against any person mustered into the service of this state or of the United States during the term for which he shall be engaged in such service, nor until 30 days after he shall have been discharged therefrom: Provided, that the operation of all statutes of limitations shall be suspended upon all claims against such person during such term": Act of April 18, 1861, P. L. 408, sec. 4.

Defendant thereupon moved for a judgment of non pros and for judgment on the pleadings. At this stage of the proceedings, the case is complicated by the fact that as to that part of plaintiffs' claim which relates to damages to his automobile, the statute had not run on June 16, 1955, when the complaint was filed. We cannot therefore enter a judgment of non pros or on the pleadings as to that part of his claim.

To postpone until trial the question of plaintiffs' right to proceed on that part of the claim which relates to bodily injury would merely place both parties to great expense and inconvenience, perhaps unnecessarily if the case were finally to turn upon the statute of limitations. Furthermore, it is likely that defendant would pay the property damages without question, if the matter of bodily injuries is disposed of.

If either of the reasons for tolling the statute is good, the case must go to trial. We are convinced, therefore, that we must explore both applicability of the Act of 1861 and the alleged lulling to security.

We are convinced that the Act of 1861 never applied to peacetime enlistees, that it is no longer in force and that if it were it would not avail plaintiffs under the circumstances.

There is good reason to believe that the Act of 1861 was intended to relate solely to members of the State militia called into service to suppress the rebellion.

Some support for this construction is found in the words "mustered into the service." In strict military parlance, the words "mustered in" mean introduction into service of a body of men (State militia) as opposed to the enlistment of individuals. See Winthrop, Military Law and Precedents, 1920 ed., p. 537. The author, however, admits that the words are sometimes confounded with enlistment and that "strictly" they are without application to persons separately enlisted. These limitations leave an opening for loose legislative

use of the term and do not stamp them with an unmistakable technical meaning.

When we look at the history of the legislation (see opinion of Judge Woodward in Mechanics' Savings Bank v. Sallade, 1 Woodward 23), the stricter use of the term is supported. On April 12, 1861, Fort Sumter was fired upon; on April 15, 1861, President Lincoln called the State militia into service and on April 18, 1861, this and other acts were passed defining the rights of soldiers.

Plaintiffs have not cited a single appellate court case in which the Act of 1861 was applied to other than men mustered into service as members of the State militia.

On the other hand, the Supreme Court in Sheetz v. Wynkoop, 74 Pa. 198, 206, refused to apply the Act of 1861 to an officer in the United States Army, because, among other reasons, the record failed to show that he was an officer or private of the militia although he was then in active military service of the United States. In Land Title and Trust Co. v. Rambo, 174 Pa. 566, 568, this holding of Sheetz v. Wynkoop, supra, was reaffirmed, with the further statement that that case limited the Act of 1861 to the claims of persons called from the militia for suppression of the rebellion. The case of Manlove v. McDermott, 104 Pa. Superior Ct. 560, affirmed 308 Pa. 384, is absolutely inconsistent with the principle that the Act of 1861 applies to everyone in Federal military service. In the Manlove case, a naval lieutenant, while actively engaged in his duties at League Island Navy Yard was served with legal process. He sought to have this service set aside. While most of the discussion revolved about the right to serve a writ on United States territory, the decision upholding the service also took into consideration the question of exemption from service of civil process for a person in Federal military service in peacetime. The

courts held that existing Pennsylvania laws provided for no such stay or exemption.

Plaintiffs have called our attention to several appellate court cases in which the Act of 1861 has been mentioned. A study of these more recent cases, however, reveals that mention of the act and decisions under it had no reference to either the breadth of the act or to its continuance in force. It was merely cited as an example of an act constitutional because the terms of the stay were reasonable.

There are lower court cases by distinguished jurists for whom we have the highest respect holding that the Act of 1861 is still in force and applies to present enlistees in peacetime service, but these cases must bow to the law of Manlove v. McDermott, supra.

We are further of the opinion that, even if the Act of 1861 were not restricted to State militia, it would nevertheless have been repealed by the Act of April 13, 1887, P. L. 23, which incorporated section 4 of the Act of 1861 verbatim, as section 127 of the 1887 Act. The repealer clause of the Act of 1887, after citing certain acts (not including the Act of 1861), reads as follows: " . . . and all other acts, or supplements, or parts thereof, inconsistent with *or supplied by* the provisions of this act, be and the same are hereby repealed."

It is to be noted that the Act of 1887 is a peacetime act, limited strictly to the militia or National Guard and that the exemption from civil process is only while in active service and not continuously while a member of the guard. See Rambo case, supra, 569. To apply the Act of 1861 to peaceful military service would render the act unconstitutional, because of the possible unreasonable delay in enforcing obligations against a military man. See Breitenbach v. Bush, 44 Pa. 313, 319, in which the existing emergency (the Civil War)

was cited as one of the reasons for supporting the constitutionality of the Act of 1861 along with the limitation on the term of service and the mutuality of tolling the statute of limitations.

The very provision for tolling the statute might interfere with Federal enlistment, if the enlistee were to be faced with stale claims upon his return from service. Strangely, plaintiffs have cited no cases in which the tolling of the statute was invoked by a creditor.

Even if the statute were tolled in this case by reason of defendant's military service, it would avail plaintiffs nothing. The Act of 1861 says that "no civil process shall issue" against any person in the service of the United States. That provision made the issuance of the original summons void and nugatory. Assuming that the statute had been tolled by defendant's entry into the military service on February 19, 1952, there remained 11 months and 10 days of the two-year period to run after his discharge on December 1, 1953. This period, therefore, expired on December 11, 1954, allowing for the additional 30 days after discharge. Plaintiffs cannot, on the one hand, claim that the summons was good and therefore tolled the statute and at the same time take advantage of an act that declares that process shall not issue, thus vitiating their summons.

At first blush, we are not greatly impressed by the argument that an insurance adjuster lulled plaintiffs into security. Nor are we impressed by defendant's contention that the adjuster had no authority to speak for defendant. We have no doubt that the real party interested today is the insurer, and it cannot now hide behind its insured if it were guilty of acts that would have tolled that statute of limitations. It is doubtful whether there was present the positive deceit or the overreaching of an ignorant claimant that we find in the case where the statute has been tolled.

We indulge in no further discussion of this point, however, because we feel that we should be in possession of the "understanding" verbatim and not by indirect recital. Then we can decide whether the language used would, under the law, operate as a tolling of the statute.

This course is approved in Prettyman v. Irwin, 273 Pa. 522, in which the court stated, page 527:

"It does not follow, however, that the question of the effect of plaintiff's delay in issuing the alias writ cannot be raised and decided prior to a trial on the merits. . . . Special pleading being abolished and thereby the method previously in force for raising this question in limine being done away with, but not the right to have it preliminarily decided, the courts are left free to provide an appropriate remedy, by general rule or special order . . . by adopting the practice approved in the cognate case of Forrest v. Phila. Rapid Transit Co., 261 Pa. 383, 389, and granting a rule to show cause why a judgment of non pros should not be entered, because the particular writ was not issued in time. If, on the hearing thereof, the essential facts are undisputed, the rule should be made absolute or discharged as those facts warrant; but if there is an issue of fact to be decided, the rule should be discharged without prejudice, and the determination of this question submitted to the jury at the same time as the trial of the other issues, just as was the practice prior to the Procedure Acts. . . ."

If the results of depositions leave the matter in dispute, our time will have been wasted, but time seems to be of no moment in this case, in which no attempt was made to bring suit for 22 months or to reply to new matter for two years.

On the other hand, if the depositions reveal no valid cause for plaintiffs' delay, both sides will have been

132

saved inconvenience and expense. Since defendant is seeking this preliminary determination of the facts relating to the tolling of the statute of limitations, he should bear the initial expense thereof, subject to their taxation as costs.

Now, December 16, 1957, it is ordered defendant's motions for non pros and for judgment on the pleadings insofar as they relate to the claim of plaintiffs for bodily injuries, be held under advisement and that, in accordance with the foregoing opinion, depositions be taken at defendant's initial expense, subject to taxation as costs, to establish, if possible, the facts upon which plaintiffs rely to excuse their failure to file a complaint within the time allowed by law.